UNITED STATES *v.* SNYDER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 229. Submitted April 20, 1893. — Decided May 1, 1893.

The lien imposed upon the real estate of a manufacturer of tobacco, snuff or cigars, by Rev. Stat. § 3207, to secure the payment of internal revenue taxes, is not subject to the laws of the State in which the real estate is situated respecting recording or registering mortgages or liens.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for appellants.

*Mr. B. F. Jonas* for appellee.

MR. JUSTICE SHIRAS delivered the opinion of the court.

The facts of this case, as appearing by the record, are undisputed, and are as follows: Charles A. Snyder was, during the year 1878, engaged in the business of the manufacture of tobacco in the city of New Orleans, and, while so engaged, became indebted to the United States for internal revenue taxes in the sum of several thousand dollars; and these taxes were duly assessed and certified to the collector of internal revenue, who made demand for payment.

On the 20th day of November, 1879, at the time of such indebtedness and demand for payment, and for more than a year prior and subsequent to said date, the said Charles A. Snyder was the owner of certain pieces and parcels of real

estate situated in the city of New Orleans, to wit, nine several lots designated as Nos. 4, 5, 6, 9, 10, 11, 12, 13, and 14, with the buildings and improvements thereon, in the square bounded by Peters, Erato, Gaiennie, and Tchoupitoulas Streets; and by act of sale passed before Theodore Guyol, notary, on February 5, 1881, Charles A. Snyder sold, conveyed and delivered, for a valuable consideration, the said lots of ground to the International Cotton Press Company, which has been ever since in the continuous use and occupation of the same.

On April 15, 1885, a bill of complaint was filed in the Circuit Court of the United States for the Eastern District of Louisiana against Charles A. Snyder for the collection of said taxes. Nannie Mary Torian, wife of said Snyder, and the International Cotton Press Company were named as codefendants with him, it being alleged in said bill that they claimed to have liens and interests in the said pieces or lots of ground.

Mrs. Snyder was not served with process, nor was any appearance entered for her. The cause was put at issue, and so proceeded in that a personal judgment was entered against Charles A. Snyder and in favor of the United States in the sum of $3643.29, but the bill was dismissed as to the International Cotton Press Company, and from this decree an appeal was taken to this court.

The assessment on which the lien for taxes was claimed in behalf of the United States was never filed or inscribed in the mortgage office of the parish of New Orleans, as required by the laws of the State of Louisiana, in order to affect third persons; and the International Cotton Press Company purchased the property on which said tax lien was claimed to exist for full value, in good faith, and in ignorance of the said alleged assessment.

Section 3371 of the Revised Statutes, as amended by section 14 of the act of March 1, 1879, under which the taxes in question were assessed, is in the following terms:

"Whenever any manufacturer of tobacco, snuff, or cigars sells, or removes for sale or consumption, any tobacco, snuff, or cigars upon which a tax is required to be paid by stamps,

without the use of the proper stamps, it shall be the duty of the Commissioner of Internal Revenue, within a period of not more than two years after such sale or removal, upon satisfactory proof, to estimate the amount of tax which has been omitted to be paid, and to make an assessment therefor, and certify the same to the collector. The tax so assessed shall be in addition to the penalties imposed by law for such sale or removal: *Provided, however,* That no such assessment shall be made until and after notice to the manufacturer of the alleged sale and removal to show cause against said assessment; and the Commissioner of Internal Revenue shall, upon a full hearing of all the evidence, determine what assessment, if any, should be made."

Section 3186 of the Revised Statutes, as amended by section 3 of the act of March 1, 1879, is as follows:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided, until paid, with the interest, penalties, and costs that may accrue in addition thereto, upon all property and rights to property belonging to such person."

The method of remedy is provided by section 3207, Revised Statutes, as follows:

"In any case where there has been a refusal or neglect to pay any tax, and it has become necessary to seize and sell real estate to satisfy the same, the Commissioner of Internal Revenue may direct a bill in chancery to be filed in a District or Circuit Court of the United States, to enforce the lien of the United States for tax upon any real estate, or to subject any real estate owned by the delinquent, or in which he has any right, title, or interest, to the payment of such tax. All persons having liens upon or claiming any interest in the real estate sought to be subjected as aforesaid shall be made parties to such proceedings, and be brought into court as provided in other suits in chancery therein. And the said court shall . . . proceed to adjudicate all matters involved therein, and finally determine the merits of all claims to and

liens upon the real estate in question, and, in all cases where a claim or interest of the United States therein shall be established, shall decree a sale of such real estate by the proper officer of the court, and a distribution of the proceeds of such sale, according to the findings of the court in respect to the interest of the parties and of the United States."

The record discloses in the present case that the Commissioner of Internal Revenue did, within two years after sale and removal by Snyder of tobacco without the proper stamps, in the mode authorized and directed by law, estimate the amount of the tax omitted to be paid, make an assessment thereof, and certify the same to the collector.

The bill of complaint was in the form prescribed by law, and, upon the facts admitted, the government was entitled to a decree for a sale of Snyder's real estate in satisfaction of the sum found due by him, unless, indeed, the defence set up on behalf of the International Cotton Press Company was valid.

That defence was founded in the provisions of Article 176 of the Louisiana Constitution of 1879, in these terms: "No mortgage or privilege on immovable property shall affect third persons, unless recorded or registered in the parish where the property is situated, in the manner and within the time as is now or may be prescribed by law, except privileges for expenses of last illness, and privileges for taxes, state, parish, or municipal: *Provided,* Such privileges shall lapse in three years."

That the lien or assessment of the taxes in question was not recorded or filed in the mortgage office of the parish of New Orleans, within which Snyder's real estate was situated, and that no proceedings to enforce the lien were brought within three years, are admitted facts.

The single question thus presented for our consideration is whether the tax system of the United States is subject to the recording laws of the States.

The court below answered this question in the affirmative, but filed no opinion. Nor have the counsel of the appellees sustained the proposition on which they rely by the citation

of any authorities. It is true that, on the other hand, the attorney of the government has not referred us to any decision of this court which can be said to be directly in point. This absence of authority is doubtless attributable to the fact that the subject of Federal taxation, dealt with by Federal statutes, creating liens for taxes, and providing remedies for their collection, has always been conceded to be independent of the legislative action of the States.

The power of taxation has always been regarded as a necessary and indispensable incident of sovereignty. A government that cannot, by self-administered methods, collect from its subjects the means necessary to support and maintain itself in the execution of its functions is a government merely in name. If the United States, proceeding in one of their own courts, in the collection of a tax admitted to be legitimate, can be thwarted by the plea of a state statute prescribing that such a tax must be assessed and recorded under state regulation, and limiting the time within which such tax shall be a lien, it would follow that the potential existence of the government of the United States is at the mercy of state legislation.

Moreover, it scarcely seems necessary to look beyond the Constitution itself for a decisive reply to the question we are now considering. The 8th section of the 1st article declares that " the Congress shall have power to lay and collect taxes, duties, imposts and excises, . . . but all duties, imposts and excises shall be uniform throughout the United States." The power to impose and collect the public burthens is here given in terms as absolute as the language affords. The provision exacting uniformity throughout the United States itself imports a system of assessment and collection under the exclusive control of the general government. And both the grant of the power and its limitation are wholly inconsistent with the proposition that the States can by legislation interfere with the assessment of Federal taxes, or set up a limitation of time within which they must be collected.

Although decisions of this court upon the precise question before us cannot be cited, there are some on analogous sub-

jects which lead clearly to the conclusion that the tax system of the United States is regulated by the Federal statutes and practice, and are not controlled by state enactments.

In *Dollar Savings Bank* v. *United States*, 19 Wall. 227, it was held that the United States could maintain an action of debt for taxes due by a state bank in a Circuit Court of the United States, in disregard of a state statute prescribing a special form of remedy for the assessment and collection of taxes due by banks.

In *Murray's Lessee* v. *Hoboken Land Co.*, 18 How. 272, 281, it was said : " Among the legislative powers of Congress are the powers ' to lay and collect taxes, duties, imposts and excises, . . . and to make all laws which may be necessary and proper for carrying into execution these powers.' . . . The power to collect and disburse revenue, and to make all laws which shall be necessary and proper for carrying that power into effect, includes all known and appropriate means of effectually collecting and disbursing that revenue, unless some such means should be forbidden in some other part of the Constitution."

*Arnson* v. *Murphy*, 109 U. S. 238, was a suit under the revenue laws of the United States, wherein the plaintiffs sought to recover moneys alleged to have been illegally exacted by the collector for custom duties. The Circuit Court applied the state statute of limitations, and directed a verdict in favor of the defendant. This court held that the limitation laws of the State in which the cause of action arose, or in which the suit was brought, did not furnish the rule of decision, and that it was error in the Circuit Court to apply, as a bar to the action, the limitation prescribed by the state statute.

The conclusion reached is that that part of the decree of the court below which dismissed the bill as to the International Cotton Press Company must be reversed, and that the cause be remanded with directions to the court below to proceed therein in conformity with this opinion.

*Reversed.*