## Ivey v. Housing Foundation of America, Inc.

14

*Reynolds, Reynolds & Doran,* for plaintiffs.

*M. H. Sheridan, Receiver,* for defendants.

LEWIS, J., November 9, 1955.—This matter comes before the court on audit of the first and final account of the receiver of the Housing Foundation of America, Inc., and the presentation of certain claims by creditors of the Housing Foundation of America, Inc.

The Housing Foundation of America, Inc., a Pennsylvania corporation, with its principal place of business in Wilkes-Barre, had been engaged in the business of building prefabricated houses until sometime in 1947 when it ceased to do business. The receiver was appointed by this court upon the application of creditors. The only asset of the corporation was a tract of unimproved land located in Dallas township, Luzerne County, which was sold at private sale by the receiver for $18,600.

The receiver filed his first and final account and, no exceptions having been filed, the same was confirmed absolutely. However, distribution by the receiver could not properly be ordered from the record. There

were many conflicting and varied claims by both the State and Federal governments, wage claimants, secured creditors and general unsecured creditors. Accordingly, the court appointed an auditor for the purpose of taking the testimony of the interested parties.

After due notice to all known creditors, several hearings were held by the auditor, at which each creditor present or represented by counsel presented his claim. Subsequently the auditor filed his report in which he recommended that the balance in the hands of the receiver be paid to the State of Pennsylvania and to the United States.

We have considered the matter de novo and have given careful consideration to the testimony taken before the auditor. The record shows that there is little, if any, dispute of fact. No one has disputed the fact of any particular claim or the basis of it. The only disputed question is which creditors are entitled to distribution as a matter of law.

The claimants may be classified as follows:

1. United States Government for withholding taxes and for Federal insurance contributions.

2. Commonwealth of Pennsylvania for domestic stock bonus tax and for contributions to the State unemployment compensation fund.

3. Lien creditors.

4. Wage claimants.

5. Unsecured creditors.

The claim of the Federal Government against defendant corporation was filed on December 17, 1946, for withholding taxes, and on January 21, 1947, for Federal insurance contributions.

Sections 3670 and 3671 of the Internal Revenue Code of February 10, 1939, 53 Stat. at L. 448, 26 United States Code sections 3670, 3671, (the Internal

Revenue Code of 1954 does not apply), provide that, upon failure to pay taxes owing to the government, the amount due shall be a lien upon any property, real or personal, of the delinquent taxpayer in favor of the United States, which lien shall arise at the time that the assessment list is received by the collector of internal revenue and continue until the liability has been satisfied or becomes unenforcible. Section 3672 provides that such lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the collector under applicable State laws.

The record shows these liens were filed first in time, which we find as a fact. The United States is entitled to the full amount of its claim with interest to date. The only claimant which might object is the Commonwealth of Pennsylvania on the basis of the Unemployment Compensation Law, Act of April 23, 1942, P. L. 60. Both the Supreme Court of the United States and the Supreme Court of Pennsylvania have ruled that a lien of the United States arising by reason of priority in time of filing, cannot be defeated by State law favoring subsequent liens. In Littlestown National Bank v. Penn Tile Works Company, 352 Pa. 238, the court in an opinion by Justice Stern, now Chief Justice Stern, said at page 242:

"We need not consider whether it was intended by this legislation to confer upon state taxes and unemployment compensation contributions priority not only over other claims and liens arising under the laws of the Commonwealth but also over liens of the United States, for, whatever may have been such intention and whatever interpretation may be given to these statutes, the Supreme Court of the United States has ruled that a priority in favor of the United States which arises from priority in the date of its lien can-

not, without the consent of Congress, be impaired or superseded by state law in favor of subsequent liens imposed by authority of any law or judicial decision of the state. In Michigan v. United States, 317 U. S. 338, it was held that a tax lien securing a federal estate tax* takes precedence over later liens securing state taxes, even if the state law purports to make the state liens paramount. The Supreme Court said, per Mr. Chief Justice Stone (pp. 340, 341) : 'We do not stop to inquire whether this construction of the state statutes is the correct one, for we think the argument ignores the effect of a lien for federal taxes under the supremacy clause of the Constitution. The establishment of a tax lien by Congress is an exercise of its constitutional power "to lay and collect taxes." Article 1, §8, of the Constitution. United States v. Snyder, 149 U. S. 210. And laws of Congress enacted pursuant to the Constitution are by Article VI of the Constitution declared to be "the supreme Law of the Land and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

" ' "It is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere". . . . Hence it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by

---

* The estate tax lien under section 315 (a) of the Revenue Act of February 26, 1926, c. 27, 44 Stat. at L. 80, as amended (now section 827 of the Internal Revenue Code, 26 U. S. C. A. sec. 827, 53 Stat. 128), differs from the present employment tax lien in that it arises and is effective without demand, assessment or recording (Detroit Bank v. United States, 317 U. S. 329). But both liens, once they attach, are vested with the same attributes, and the same principle necessarily applies in regard to any question of priority between them and liens for State taxes.

18

authority of any state law or judicial decision. United States v. Snyder, supra; United States v. Greenville, 118 F. 2d 963. Similarly we held that the priority of payment commanded by R. S. §3466 could not be set aside by state legislation. United States v. Texas, 314 U. S. 480, 486; Spokane County v. United States, 279 U. S. 80; New York v. Maclay, 288 U. S. 290; cf. Missouri v. Ross, 299 U. S. 72.' "

The Federal government has also filed claims for unpaid withholding and Federal insurance contribution taxes due by Corloch Construction Company and H. C. Spaulding Co., Inc., subsidiary companies of defendant corporation. These claims are not valid against defendant and are disallowed.

The Commonwealth has made a claim of $10,661.47 for unpaid domestic stock bonus taxes, and for unpaid unemployment compensation contributions.

The Fiscal Code of April 9, 1929, P. L. 343, sec. 1401, as amended, 72 PS §1401, provides:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, penalties, and all public accounts settled against any corporation, association, or person, including interest thereupon, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person. . . ."

The Unemployment Compensation Law of December 5, 1936, 1937, P. L. 2897, sec. 308.1, as amended, 43 PS §788.1, provides that:

"All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this Act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that state taxes are paid: Provided, however, that the lien hereby created shall not be prior to preëxisting duly recorded real estate mortgages. . . ."

The claim for unpaid domestic stock bonus taxes is superior to the claim for unpaid unemployment compensation contributions. The Unemployment Compensation Act provides:

"Section 790. Priorities under legal dissolutions and distributions.

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this Commonwealth, including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceeding, contributions or installments thereof, or interest thereon, then or thereafter due shall be paid in full prior to all other claims except taxes, claims arising under The Workmen's Compensation Act of one thousand nine hundred fifteen, and its amendments and supplements, and claims for wages of not more than two hundred and fifty dollars to each claimant earned within six months of the commencement of the proceeding. In the event of an employer's adjudication in bankruptcy, judicially confirmed extension, proposal, or composi-

tion under the Federal Bankruptcy Act of one thousand eight hundred ninety-eight, as amended, contributions and interest then or thereafter due shall be entitled to such priority as are now or may hereafter be granted to taxes due a state under the said Federal Bankuptcy Act or its amendments.

"No sheriff, receiver, trustee, assignee, master, or other officer shall sell the property or franchises of any corporation or similar entity, unincorporated association, co-partnership, or individual, without first filing with the Department of Labor and Industry, not less than ten (10) days prior to such sale, a statement containing the following information: (a) name or names of the plaintiff or party at whose instance or upon whose account the sale is made; (b) the name of the corporation or similar entity, unincorporated association, co-partnership, or individual whose property or franchise is to be sold; (c) the time and place of sale; and (d) the nature of the property to be sold and the location of the same": Act of December 5, 1936 (Second Ex. Sess.), P. L. (1937) 2897, art. III, sec. 310; Act of April 5, 1942 (Ex. Sess.), P. L. 60, sec. 4; Act of September 29, 1951, P. L. 1580, sec. 11; 43 PS §790.

We hold that the claim of the Commonwealth for unpaid domestic stock bonus taxes has second priority, and should be paid after the claim of the United States. Payment to the United States and the Commonwealth will consume all of the funds in the hands of the receiver. Therefore, it would serve no useful purpose to discuss the other claims, excepting to state that we exceedingly regret that the law with respect to the priority of claims negatives any reimbursement to the unfortunate veterans who made down-payments on homes which were never built by the corporation or to the various wage claimants who gave of their time to the corporation without remuneration.

The balance in the hands of the receiver as of June 5, 1953, as per the first and final account was $15,101.88. The receiver has presented a petition claiming credit for an additional $1,037.20 for administrative costs expended since the filing of his account. This has been allowed by separate order. In addition the sum of $50 is allowed for expenses necessary to wind up the receivership and discharge the receiver. This leaves a balance for distribution of $14,014.68 which shall be distributed as follows:

United States of America—for withholding taxes and Federal insurance contributions with interest and penalties to August 5, 1955 . . . . . . . . . . $7,650.87

Commonwealth of Pennsylvania — for domestic stock bonus tax . . . . . . . . . . . . . . . . . . . . . . . $6,363.81

The receiver is directed to make distribution in accordance with the within schedule providing exceptions are not filed following 15 days' notice to all creditors.