UNION PLANTERS NATIONAL
BANK, Plaintiff,

v.

Olin S. GODWIN, Director, et al.,
Defendants,

United States of America, Intervenor.

Civ. A. No. 3036.

United States District Court
E. D. Arkansas, W. D.
April 12, 1956.

Rieves & Smith, Henry S. Wilson, West Memphis, Ark., for plaintiff.

Osro Cobb, U. S. Atty., and James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for defendants and intervenor.

LEMLEY, District Judge.

This cause is before the Court upon the motion for summary judgment filed herein by the defendants, Olin S. Godwin, District Director of Internal Revenue for the State of Arkansas, and John S. Lea, Acting District Director, and by the Intervenor, United States of America, which motion has been submitted upon the pleadings in the case and written briefs.

Union Planters National Bank, a national banking institution, brought this action against the defendants to recover possession of a certain automobile, formerly the property of one Bill Kaplan, which it had purchased at an execution sale conducted by the Sheriff of Crittenden County, Arkansas, pursuant to a judgment of the Circuit Court of said county, and which was subsequently seized by the defendants in partial satisfaction of an unpaid federal tax liability of Kaplan. After the action had been instituted, the United States intervened. The facts in the case are not in dispute, and may be summarized as follows:

On November 9, 1954, the United States filed with the Circuit Clerk of Crittenden County a notice of tax lien against Kaplan pursuant to the provisions of 26 U.S.C.A. § 3672(a), as amended by Act of October 21, 1942, 56 Stat. 957, and of Act 316 of the General Assembly of the State of Arkansas for 1941, Ark.Stats.1947, § 51–101 et seq. The Government made no attempt, however, to comply with the recording provisions of Section 60 of Act 142 of 1949, Ark.Stats. § 75–160, which is the Arkansas version of the Uniform Motor Vehicle Administration, Certificate of Title and Anti-theft Act.

Subsequently, the plaintiff obtained a judgment at law against Kaplan in the Circuit Court of Crittenden County, where Kaplan resided and where the vehicle in question was located, and thereafter said vehicle was seized and sold under execution, the plaintiff becoming the purchaser at the sale. Still later agents of the federal Internal Revenue Service seized the vehicle, over plaintiff's protest, on account of Kaplan's tax liability that has been mentioned. After this seizure of the automobile this suit was filed.[1]

---

1. The original defendants filed a motion to dismiss for lack of jurisdiction and for failure of the complaint to state a claim upon which relief could be granted; on the authority of 28 U.S.C.A. § 2463, which provides that property seized under the revenue laws shall not be repleviable but shall be subject to the orders and decrees of the courts of the United States having jurisdiction thereof, and of cases like Rothensies v. Ullman, 3 Cir., 110 F.2d 590; Raffaele v. Granger, 3 Cir., 196 F.2d 620; and Gerth v. United States, D.C.Cal., 132 F.Supp. 894, we held that we had jurisdiction. At the same time we held that while it might be possible for us to dispose of the legal issue in the case, which will presently be mentioned, in connection with the defendant's claim that the complaint did not state a claim upon which relief could be granted, it would be better practice for the defendants to answer, leave being given to either side to thereafter file a motion for summary judgment. The defendants then answered, and the United

Before undertaking to set out and discuss the theories of the respective parties, we deem it well to briefly abstract the statutes, both federal and state, here involved:

Since the Government filed its notice of tax lien in November of 1954, the applicable federal statutes will be found in the 1939 edition of the Internal Revenue Code, 26 U.S.C.A., as amended prior to the effective date of the 1954 Internal Revenue Code. All references to 26 U.S.C.A. are to the 1939 edition thereof.

The Government's tax lien here involved is based upon 26 U.S.C.A. § 3670, which provides that if any person liable to pay any tax due the Government neglects or refuses to pay the same after demand, the amount thereof, including interest, costs and penalties, "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.A., § 3671, provides that, as between the Government and the taxpayer, the lien arises when "the assessment list [is] received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." As to creditors and purchasers, however, 26 U.S.C.A. § 3672(a) (1), as amended, provides that such lien shall not be valid as to such persons until notice thereof has been filed, " * * * In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory".[2] Section 3672(a) (2) then goes on to provide that if the State or Territory fails to provide by law an office within which such notice may be filed, the same may be filed in the " * * * office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated".

In 1941 the General Assembly of the State of Arkansas, acting under the authority of the federal enabling act that has been mentioned,[3] adopted the Uniform Federal Tax Lien Registration Act, Act 316 of 1941, hereinafter sometimes called simply Act 316, Section 1 of which provides that notices of such liens shall be filed in the office of the Circuit Clerk of the county or counties within the State where the property subject to the lien is located; and there is no question that the Government filed its notice of lien involved in this case in full compliance with that statute.

In 1949 the General Assembly adopted the Uniform Motor Vehicle Administration, Certificate of Title, and Anti-theft Act, Act 142 of 1949, which will hereinafter sometimes be called simply Act 142, Section 60(a) of which reads as follows: "No conditional sale contract, conditional lease, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession, is valid as against the creditors of an owner acquiring a lien by levy or at-

---

States intervened; a short time later the motion under consideration was filed.

2. Prior to the 1942 amendment, that section provided that a notice of a federal tax lien might be filed, "In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice". Although we do not deem the matter to be of controlling importance in this case, it would appear to be at least arguable that the text just quoted, and which was derived from the Revenue Act of 1928, is much broader and leaves

more room for State regulation of federal tax liens than the 1942 act.

3. It is well established that the states may legislate with respect to federal tax liens only to the extent that such legislation is permitted by Congress. United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705; United States v. Bank of Mt. Hope, 4 Cir., 46 F.2d 455. The grant of power contained in 26 U.S.C.A. § 3672(a) (1) is to be strictly construed in favor of the Government. See Cornell v. Coyne, 192 U.S. 418, 24 S.Ct. 383, 48 L.Ed. 504.

tachment or subsequent purchasers or encumbrances [sic] with or without notice until the requirements of this article has [sic] been complied with." Section 60(b) provides that, "There shall be deposited with the department [Arkansas State Revenue Department] a copy of the instrument creating and evidencing such lien or encumbrance, which instrument is executed in the manner required by the laws of this State with an attached or endorsed certificate of a notary public stating that the same is a true and correct copy of the original and accompanied by the certificate of title last issued for such vehicle." Subsection (d) of Section 60 provides that if the vehicle in question is subject to registration under the Act but has not been registered, the certified copy of "the instrument creating such lien or encumbrance shall be accompanied by an application by the owner in usual form for an original registration and issuance of an original certificate of title." Subsection (e) provides that after the documents that have been referred to are received by the Department, the latter shall issue a new certificate of title showing the name of the owner and all liens to which the vehicle is subject. Subsection (f) requires the Department to maintain an appropriate index of all lien, encumbrance, or title retention instruments filed as provided by the preceding subsections.

Section 61(a) of the Act states that the filing of the documents mentioned "and the issuance of a new certificate of title as provided" shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, to subsequent purchasers and encumbrancers, except such liens as may be authorized by law dependent upon possession. It is further provided in that subsection that if the documents referred to in Section 60 are received by the Department within 10 days of the date of execution thereof, the constructive notice shall date from the time of execution of said documents, otherwise from the time of their receipt and filing.

Section 61(b) provides that the method set forth above "shall be exclusive except as to liens dependent upon possession and any said lien or encumbrance or title retention instrument filed as herein provided and any documents evidencing the same are hereby exempted from the provisions of law which otherwise require or relate to the recording [or] filing of instruments creating or evidencing title retention or other liens or encumbrances upon vehicles of a type subject to registration hereunder."

As has been stated, the Government complied with the recording provisions of Act 316 but made no effort to comply with Act 142; it is the theory of the plaintiff that the two acts are in direct conflict as far as notices of federal tax liens on automobiles are concerned, and that to that extent the latter statute repealed the former, and that the Government to validate its lien against subsequent purchasers of Kaplan's car was required to comply with Act 142. This is denied by the Government, which contends that its compliance with Act 316 was sufficient. Those conflicting contentions present the only question for decision here.

■ Since 26 U.S.C.A. § 3672(a) (1) makes specific reference to State law as determinative of where notices of federal tax liens shall be filed, provided that a particular State has made provision for the filing of such notices, it is necessary for us in order to dispose of this case to construe Sections 60 and 61 of Act 142 so as to determine whether or not, insofar as motor vehicles are concerned, they have repealed or supplanted Section 1 of Act 316. From our consideration of the provisions and purposes of the two statutes in question, and particularly of the recording scheme contemplated by Sections 60 and 61 of Act 142, we are satisfied that these sections were not intended to apply to federal tax liens, and that there is no conflict between them and Act 316, and that it was not the intention of the Legislature to repeal Act 316 as it related to automo-

biles or otherwise. Hence, the Government's motion must be sustained.

In taking this question up it should first be pointed out and emphasized that when Act 316 was adopted, the Legislature was acting with specific reference to federal tax liens, which are involuntary and which extend to and affect all of the delinquent taxpayer's property and rights in property; the Legislature was interested in taking advantage of the power conferred upon it by Section 3672 (a) and in protecting the people of Arkansas from federal tax liens, notices of which might be filed in the office of a clerk of a United States district court considerably removed from the location of the property in question; and it was concerned with that subject and with none other.

Such was not the case when the comprehensive 1949 statute was adopted; then the Legislature was concerned, among other things, with providing a system for the registration of title to and the recording of liens on one specific type of personal property, namely, motor vehicles; obviously such a system is primarily concerned with transactions between those who buy and sell and lend money on such vehicles and with the instruments evidencing such transactions, rather than with involuntary liens which come into being by operation of law. A system which may be entirely satisfactory for recording transfers and encumbrances based upon contract may be inadequate for noting liens that do not have a contractual basis. It is significant to note in this connection that the 1949 statute does not expressly refer to federal tax liens at all, and that the types of interests and liens to which it does expressly refer, namely, conditional sale contracts, conditional leases, and chattel mortgages, are purely contractual.

When the pertinent recording provisions of Act 142 are construed together, as they must be, it is at once apparent that they do more than merely provide a place where lien instruments may be filed and recorded; together they constitute an integrated method of filing and recordation which contemplates that liens and encumbrances on motor vehicles will be ultimately reflected in the title certificates covering such vehicles so that a person who buys or who lends money on a vehicle may examine the title certificate and at once determine whether or not there are any other outstanding interests thereon and, if so, the nature and extent of such interests. The purpose of those sections is by no means fulfilled merely by filing a lien instrument with the Revenue Department; such a filing, of a chattel mortgage, for example, in lieu of the local filing that was previously required, without more would place a subsequent purchaser or encumbrancer in a more unfavorable position than he was before since he would have to go to Little Rock to examine the records rather than to his own county courthouse. Plainly, the process contemplated by Sections 60 and 61 is not completed until the security interest in question is endorsed upon the certificate of title covering the vehicle subject to such interest.[4]

The method of preserving and giving constructive notice of liens and other security interests contemplated by Act 142 would appear to work very well as far as the contractually created title and security interests expressly mentioned therein are concerned; but it is clear that said method is inappropriate to preserve and give notice of a federal tax lien arising by operation of law, and we do not believe that it was the intention of the Legislature to include such a lien within the purview of said Act.

In the first place, Section 60 (b) refers to a certified copy of the instrument "creating and evidencing" the lien or encumbrance to be preserved, and also prescribes that such instrument is to

---

**4.** Section 39(e) of Act 142 provides that the title certificate is to be held by the owner of the vehicle or by the holder of the first lien if the vehicle is subject to a lien or liens.

be "executed in the manner required by the laws of this State". Also Section 60(d) refers to the instrument "creating such lien or encumbrance". Those terms would not seem to apply to federal tax liens which, while they may be "evidenced" by notices thereof, are not "created" by any instrument but are solely creatures of the statute. Furthermore, even if it be granted that under Section 3672(a) (1) as amended by the 1942 Revenue Act the States may not only prescribe the places where notices of federal tax liens are to be recorded but also may make reasonable requirements as to the form and contents of such notices,[5] there is certainly nothing in that statute which would give the States the power to prescribe the manner in which such notices are to be executed. We have already mentioned in a preceding footnote that the States have no power to legislate with regard to federal tax liens, except such as may be granted by Congress, and that the grant contained in Section 3672(a) (1) is to be narrowly construed. The fact that the section of Act 142 now under discussion refers to instruments "creating" liens and encumbrances and executed in accordance with the laws of Arkansas seems cogent evidence that the Legislature did not have federal tax liens in mind.

Moreover, it appears that Section 60 in its requirement that when a vehicle is to be subjected to a lien or encumbrance, the outstanding title certificate must be surrendered and a new one issued, contemplates a degree of cooperation between the lienholder and the owner of the vehicle subject to the lien which is ordinarily present in cases involving buyers and sellers, lessors and lessees, and mortgagors and mortgagees, but which is highly unlikely to exist between the federal government and a delinquent taxpayer. We have already pointed out that the purpose of Section 60 is not fulfilled merely by the filing of a lien instrument with the Revenue Department, but only by the filing of such instrument followed by the issuance of a new certificate of title showing the existence of the lien. We think that it would be entirely unreasonable to say that the Legislature intended to require the Government, in order to validate its lien on an automobile against subsequent encumbrancers and purchasers, to go out and induce the taxpayer to surrender his title certificate so that Section 60 could be complied with; such a construction of the statute would not only be unreasonable but would obviously raise a serious question as to the constitutionality of Section 60 as applied to the Government. On the other hand, it would be equally unreasonable to say that the Legislature intended to excuse the Government from obtaining the taxpayer's title certificate and having a new one issued showing its lien, but did intend to have the notice of lien filed with the Revenue Department in Little Rock rather than with the Circuit Clerk of the county where the automobile is located; such a construction would obviously make it more difficult for a subsequent purchaser or encumbrancer to protect himself from a federal tax lien than it is under the provisions of Act 316 of 1941.

In support of its position the plaintiff cites United States v. Maniaci, D.C.Mich., 36 F.Supp. 293, affirmed, 6 Cir., 116 F.2d 935; that case, decided prior to the 1942 amendment, involved a Michigan statute which required that a notice of a federal tax lien should describe the land sought to be charged, and it was held that such a requirement

---

5. Such power was held to exist in United States v. Maniaci, D.C.Mich., 36 F.Supp. 293, affirmed, 6 Cir., 116 F.2d 935, which was decided under Section 3672(a) (1) prior to the 1942 amendment. We have already in a preceding footnote given the text of that section as it then existed and have made some comment thereon.

The same position was taken in Youngblood v. United States, 6 Cir., 141 F.2d 912, and in United States v. Ryan, D.C. Minn., 124 F.Supp. 1, both of which cases were decided after the 1942 amendment and in spite of the change in verbiage; we shall make some comment as to those cases later on.

was reasonable and valid.[6]   There was no question there, however, that the Government could have perfected its lien, regardless of the will and cooperation of the taxpayer, had it chosen to do so, by describing his land in the notice; and the same thing may be said about Youngblood v. U. S., 6 Cir., 141 F.2d 912.   A case more closely analogous to the instant one is United States v. Ryan, D.C., Minn., 124 F.Supp. 1, wherein it was held that the United States claiming a lien on Minnesota land registered under the Torrens system was required to comply with the provisions of the state statute requiring that liens on registered land be filed with the local registrar of titles, and that the lands charged must be described, and the lien noted on the title certificate.   It is plain from the opinion, however, that the Government could have validated its lien against the lands in question without regard to the cooperation of the owner, so that case may be distinguished from this one on that basis just as the Maniaci and the Youngblood cases have been distinguished.   Moreover, it is clear from the Minnesota Statutes set out in the opinion that the Legislature of that State definitely intended for federal tax liens and certain other involuntary liens covering registered land to be preserved in accordance with the Torrens system; such is not the case here.[7]

■   As stated, we do not believe that Act 142 of 1949 affected federal tax liens or repealed Act 316 of 1941 as far as motor vehicles are concerned; the Legislature is presumed to have been familiar with its earlier enactment on the subject of such liens, and we are satisfied that if it had intended to change the law as to the filing of notices thereof, it would have done so more specifically, and would have prescribed a different method for validating such liens than is provided in Section 60 of Act 142.[8]

Let an order in accordance with the foregoing be entered.

6.   We take judicial notice of the fact that notices of federal tax liens do not describe any specific property; they simply give the name and address of the taxpayer, the amount of the assessment, and certain other information pertaining to his obligation.

7.   The Maniaci case above referred to may very well have been correctly decided in view of the wording of Section 3672(a) (1) as it was then written.   The decision in the Youngblood case may well have been correct also on the facts there presented; that case did not actually involve a question of the validity of a federal tax lien but was an action to compel a recorder of deeds in Michigan, a purely ministerial officer, to receive and file a notice of tax lien which did not comply with the Michigan statute, and which he could not legally receive and file under that statute; it was held that mandamus would not lie against him. There is language in the case to the effect that the 1942 amendment to Section 3672(a), which amendment incidentally came shortly after the Maniaci decision was rendered, did not work any substantial change in the law; that language, however, would seem to be dictum. The correctness of the decision in U. S. v. Ryan, supra, may be open to question. The court did not itself discuss the change in Section 3672(a) (1) effected by the Revenue Act of 1942 and was evidently influenced by the Youngblood and Maniaci decisions.   The view may well be taken, although we find it unnecessary to decide the question here, that the 1942 amendment reflected a Congressional disapproval of the Maniaci decision and intended to narrow the power given to the states by the 1928 Revenue Act and the 1939 Revenue Code to legislate with regard to federal tax liens.

8.   In support of its position here the Government has cited the case of Liberty Bldg. Co. v. Riddell, D.C.Cal., 53–1–U.S. T.C. 9404, wherein District Judge Byrne held that the Government was not required to comply with the recording provisions of the Vehicle Code of California and that compliance by it with California Government Code, § 27,330, which is comparable to Arkansas Statutes, § 51–101, was sufficient.   The Court did not discuss the problem, however, and the verbiage of Section 195 of the California Vehicle Code is somewhat different from that of Ark.Stats. § 75–160, and for that reason we do not feel that the case can be considered in point here.