CHARLES E. VILLANUEVA, PLAINTIFF, v. WILLIAM M. WOLFF AND LOUISE L. WOLFF, HIS WIFE; ENGINEERS INCORPORATED, A MAINE CORPORATION; NEW GENERATION CAR WASH, INC., A NEW JERSEY CORPORATION; AND, THE UNITED STATES OF AMERICA, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Essex County

Decided May 21, 1980.

*Donald M. Karp*, for plaintiff.

*Steven Toscher*, for defendant United States of America (*Robert J. Del Tufo*, United States Attorney, attorney).

DWYER, J. S. C.

Plaintiff Charles E. Villanueva, Esq. ("stakeholder") holds $11,014.61 in an interest–bearing account pursuant to a closing agreement between defendant Engineers Incorporated, a Maine corporation ("seller"), and defendant New Generation Car Wash, Inc., a New Jersey corporation ("buyer"), for the sale of real estate located in West Caldwell, Essex County, New Jersey.

The sum of $11,014.61 was placed in escrow to cover the amount of liens filed by the IRS against defendants William M. Wolff and Louise L. Wolff, his wife (the Wolffs), who had owned said real estate and conveyed it to Engineers by deed

dated June 3, 1976 and recorded June 7, 1976 in the Office of the Register of Deeds of Essex County. Seller conveyed to buyer by deed dated June 21, 1977.

Stakeholder filed a complaint in interpleader alleging that seller was demanding the sum held, buyer was demanding the sum be applied to the federal tax liens. By a consent order the United States had been joined as a party and was asserting that it had valid and enforceable liens against the Wolffs, and by reason of their nexus to Seller, against the real estate prior to the conveyance to buyer. The date, amounts and recording data for the federal liens are set forth in the footnote below.[1]

In response to stakeholder's motion for summary judgment to be permitted to deposit the funds in court, be allowed a counsel fee and to enjoin all suits against the stakeholder, all parties agreed to a consent order for the deposit of the funds in court and an injunction against further suits, but the United States objected to the allowance of a counsel fee until the priority of its lien was determined. Thus, the only issue before the court is the awarding now of counsel fees under R. 4:42-9(a)(2) which is supported by an adequate affidavit of services.

The United States opposes stakeholder's request for counsel fees and costs, alleging that such an award may impair the lien interest which it claims in the interpleaded fund. The United States contends that an award of counsel fees to stakeholder might reduce its eventual recovery and thus create a priority over the federal tax lien for which federal law makes no

---

[1]

| Date of Recordation | Notice of Federal Tax Lien | Date | Place | Amount |
|---|---|---|---|---|
| 5/23/75 | Wolffs | 5/14/75 | Essex Cty. | $ 834.24 |
| 6/7/76 | Wolffs conveyed to Engineers | 6/3/76 | | |
| 10/6/76 | Wolffs | 10/14/76 | Union Cty. | 10,419.16 |
| 3/11/77 | Wolffs | 3/10/77 | Essex Cty. | 10,429.66 |
| 5/31/77 | Engineers conveyed to Generation—closing 6/21/77 | | | |

The court does not pass upon the effect, if any, of the Government's filing of the tax lien in Union County.

provision. The United States proposes that consideration of stakeholder's request for counsel fees must be deferred until after its lien priority is determined, at which time an award may be made, provided such an award does not diminish the lien priority of the United States. In an affidavit supporting its position the United States also contends that the transfer from the Wolffs to seller was in fraud of Wolffs' creditors, including the United States, and should be set aside to the extent of the fund held by stakeholder.

In contrast to these assertions, stakeholder initially contends that the federal tax lien or levy is not "specific or perfected." Stakeholder reasons that if the United States were to prove its liens against the Wolffs, i. e., the individuals against whom the United States recorded its liens and issued its levies, it is still left with the task of proving that the Wolffs and seller are legally indistinguishable. Accordingly, stakeholder further urges that in the absence of a specific or perfected lien, i. e., a lien where "there is nothing more to be done," *United States v. Equitable Assurance Soc.*, 384 *U.S.* 323, 86 *S.Ct.* 1561, 16 *L.Ed.*2d 593 (1966), an award of counsel fees to the disinterested stakeholder is not contrary to the applicable federal law and should be granted in the exercise of the court's discretion pursuant to *R.* 4:42–9(a)(2). Alternatively, he argues that if the court finds that the United States has perfected its lien with respect to the notice of lien for $843.24, recorded prior to the Wolff–Sellers transaction, then the court should "freeze" that portion of the interpleaded funds while allowing the award of counsel fees from the balance.

In his affidavit of services rendered stakeholder made application under *R.* 4:42–9(a)(2). *R.* 4:42–9(a)(2) entitled "out of a fund in court," provides, in pertinent part, that "[t]he court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury." Although a New Jersey court has never considered the interaction between an allowance of counsel fees under *R.* 4:42–9(a)(2) and a federal tax lien created pursuant to 26 *U.S.C.A.* § 6323(e) and (f), guidance may be obtained from a review of a similar issue which arose under *R.* 4:42–9(a)(4).

■ It is well settled that when the United States asserts the priority of a federal tax lien over a competing claimant, the outcome is "always a federal question to be determined finally by the federal courts." *United States v. Acri*, 348 *U.S.* 211, 213, 75 *S.Ct.* 239, 241, 99 *L.Ed.* 264, 267 (1955); *United States v. Waddill Co.*, 323 *U.S.* 353, 356–357, 65 *S.Ct.* 304, 306, 89 *L.Ed.* 294, 299, 300 (1945). Therefore, this court must resort to an analysis of the applicable federal law.

In *United States v. Equitable Life Assurance Soc.*, 384 *U.S.* 323, 86 *S.Ct.* 1561, 16 *L.Ed.*2d 593 (1966), rev'g *sub nom. Equitable Life Assurance Soc. v. Bagin*, 45 *N.J.* 206 (1965), the United States Supreme Court considered a question analogous to that presented here. There the court, in reversing a decision of our Supreme Court, held that a federal tax lien was entitled to priority over a claim for attorney's fees arising under former *R.R.* 4:55-7(c), now *R.* 4:42-9(a)(4). The precise question addressed in *Equitable Life* was "whether a federal tax lien is entitled to priority over the mortgagee's claim for such an attorney's fee, where notice of the tax lien is recorded prior to default by the mortgagor." 384 *U.S.* at 324, 16 *L.Ed.*2d at 595. New Jersey's highest court had held that the state–created lien was superior.

In that case Albert Bagin and his wife had executed to Equitable Life a first mortgage on certain real property in New Jersey. The mortgage was recorded on December 19, 1960. On March 21, 1962, the United States filed and recorded, in accordance with 26 *U.S.C.A.* § 6323 (1964 ed.), a federal tax lien against Bagin for $7,448.91 under 26 *U.S.C.A.* §§ 6321–22. Less than one year later the Bagins defaulted on the mortgage and Equitable Life foreclosed. Equitable Life claimed the principal and interest due under the mortgage, as well as an attorney's fee under *R.R.* 4:55–7(c). Although it conceded the priority of the claim under the mortgage, the United States contested the award of counsel fees, contending the fee allowance was inferior to the federal liens.

Setting forth the general standard to be applied, the court explained:

> As against a recorded federal tax lien, the relative priority of a state lien is determined by the rule "first in time is first in right," which in turn hinges upon whether, on the date the federal lien was recorded, the state lien was "specific and perfected." A state lien is specific and perfected when "there is nothing more to be done . . . —when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." "Thus, the priority of each statutory lien depend on the time it attached to the property in question and became choate." [384 U.S. at 327–328, 86 S.Ct. at 1564, 16 L.Ed.2d at 597]

Applying this standard to the case before it, the Supreme Court noted:

> At the time the federal lien was recorded Equitable's mortgage was not even in default—no reference whatever had been made to attorneys, no suit had been filed, nor had any sums been "adjudged to be paid." New Jersey's Rule 4:55–7(c), *supra*, n.2, which fixes the lien had not even been invoked must less applied to establish the amount of the lien. The claim was wholly contingent at the time the federal lien matured. . . . [A]t the time the federal lien matured here no sum of money due on the mortgage had been "adjudged." Adjudication alone triggers the mathematical machinery of Rule 4:55–7(c) whereby liability for the attorney's fee is fixed. No liability having been incurred there could of course be no lien in existence at the time the federal lien matured. [384 *U.S.* at 328–329, 86 *S.Ct.* at 1564, 16 *L.Ed.*2d at 597–598]

Finally, the Supreme Court also asserted that

> . . . . the mortgagee by foreclosing does not produce a fund from which the United States benefits, without expenditure on its part. A foreclosure is more akin to a liquidation of assets than to the creation, enhancement or protection of a common fund from which equity permits reimbursement of costs of litigation. [384 *U.S.* at 331, 86 *S.Ct.* at 1566, 16 *L.Ed.*2d at 598–599; footnote omitted]

In a footnote supporting this proposition, the court cited *Trustees v. Greenough*, 105 *U.S.* 527, 26 *L.Ed.* 1157 (1882), and *Sprague v. Ticonic National Bank*, 307 *U.S.* 161, 59 *S.Ct.* 777, 83 *L.Ed.* 1184 (1939), stating: "In the latter case [one where the attorney creates, enhances or protects a common fund], courts proceeding under statutory or inherent equitable powers have traditionally awarded attorneys' fees." 384 *U.S.* at 331, n.5, 86 *S.Ct.* at 1566, n.5, 16 *L.Ed.*2d at 599.

Of like effect is the Supreme Court's opinion in *United States v. Pioneer American Ins. Co.*, 374 *U.S.* 84, 83 *S.Ct.* 1651, 10 *L.Ed.* 2d 770 (1963). In *Pioneer American*, the United States sought review of an Arkansas decision subordinating the federal tax lien, arising under 26 *U.S.C.A.* § 6321, to a lien for attorney's fees included in an antecedent mortgage contract. During October 1960 the mortgagor defaulted in their monthly install-

ment and failed thereafter to meet payments as they fell due. Accordingly, on March 24, 1961 Pioneer American filed a suit to foreclose its mortgage and sought, in addition to the principal and interest, a reasonable attorney's fee. The note had obligated the mortgagors to pay a reasonable attorney's fee in the event of default.

The United States was named as a party defendant because of two outstanding federal tax liens against the mortgagors which were filed on November 29, 1960 and January 30, 1961. Although conceding that its liens were subordinate to the principal and interest on the mortgage, the United States claimed that the tax liens were superior to the claim for the attorney's fee. The United States subsequently filed three additional tax liens on April 14, July 17 and October 3, 1961.

On November 15, 1961 the Arkansas Chancery Court entered a judgment of foreclosure, fixing the attorney's fee at $1,250 and determining the priority of the various claimants. Pioneer American was awarded first priority for principal, interest and the attorney's fee. The second mortgagee took next on principal and interest. A mechanic's lien was accorded third priority and the United States took last. After the property was sold, all claims except $3,615.28 of the federal tax lien were satisfied.

The Supreme Court explained:

> The priority of the federal tax lien provided by 26 *U.S.C.* § 6321 as against liens created under state law is governed by the common–law rule—"the first in time is the first in right." *United States v. New Britain*, 347 *U.S.* 81, 85, 86 [74 *S.Ct.* 367, 370], 98 *L.Ed.* 520, 525, 526. It is critical, therefore, to determine when competing liens, whether federal–or state–created, come into existence or become valid for the purpose of the rule. [374 *U.S.* at 87, 83 S.Ct. at 1654, 10 *L.Ed.* 2d at 774].

The Court then proceeded to analyze both the federal and state created liens. The federal tax lien, by virtue of § 6322, arose when the tax was assessed, but as against certain specific interests contained in § 6323 subsection (a) it was not valid until placed of public record.

As for a lien created by state law, the court said:

> . . . its propriety depends "on the time it attached to the property in question and became choate." . . . Choate state–created liens take priority

over later federal tax liens, . . . while inchoate liens do not . . . . . And it is a matter of federal law when such a lien has acquired sufficient substance and has become so perfected as to defeat a later–arising or later–filed federal tax lien. "Otherwise, a State could affect the standing of federal liens, contrary to the established doctrine, simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined." *United States v. New Britain, supra,* (347 *U.S.* at 86 [74 S.Ct. at 370]). The federal rule is that liens are "perfected in the sense that there is nothing more to be done to have a choate lien–when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Id.,* 347 *U.S.* at 84, 74 S.Ct. at 369. [374 *U.S.* at 88–89; 83 *S.Ct.* at 1655, 10 *L.Ed.*2d at 774–775]

The court then proceeded to analyze the various aspects of the state–created lien, *i. e.,* the identification of the lienor, the property subject to the lien and the establishment of the amount. Although the identity of the lienholder and the property subject to the lien were definite, the court determined that the amount of the lien for the attorney's fee was "undetermined and indefinite when the federal tax liens in question were filed." 374 *U.S.* at 90, 83 *S.Ct.* at 1656, 10 *L.Ed.*2d at 775 (footnote omitted). While the federal tax liens were placed of public record after the default had occurred, an attorney had been engaged and a suit to foreclose instituted, the court highlighted the fact that "the 'reasonable attorney's fee'—reasonable in relation to the service to be performed by the attorney—had not been reduced to a liquidated amount." *Id.* at 90–91, 83 *S.Ct.* at 1656, 10 *L.Ed.*2d at 776. Moreover, the court observed that the Chancery court set the fee considerably lower than the sum requested. Thus, the court held the federal tax liens to be superior and entitled to priority over the state–created lien for attorney's fee.

Based upon *Equitable Life* and *Pioneer American, supra,* it is incumbent upon this court to engage in a similar two–step analysis. The application of the common law rule–"the first in time is the first in right"–necessitates a determination of when the competing liens came into existence.

■ The Federal Tax Lien Law, 26 *U.S.C.A.* § 6321 *et seq.,* reveals that the federal lien arises pursuant to § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same

after demand . . . ." 26 *U.S.C.A.* § 6321. The lien imposed by § 6321 arises at the time "the assessment is made." *Id.* § 6322. The Federal Tax Lien Law also establishes certain categories of priorities as against certain persons. *Id.* § 6323. As "against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor," the § 6321 lien is not valid until recorded in accordance with the appropriate state law. *Id.* § 6323(a), (f). However, Congress has created several categories of "super liens." Section 6323(b) provides:

(b) Protection for certain interests even though notice filed.—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

.    .    .    .    .    .    .    .

(8) Attorneys' liens.—With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer of the United States. [26 *U.S.C.A.* § 6323(b)(8)]

Clearly, the attorney's request for fees in this case does not fall within the ambit of "attorneys' liens" set forth in § 6323(b)(8) which are entitled to super priority. Accordingly, the tax liens in the instant case were valid upon recordation as against this adverse claimant.

With respect to the state–created lien, "it is a matter of federal law when such a lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later–filed federal tax lien." *Pioneer American,* 374 *U.S.* at 88, 83 *S.Ct.* at 1655, 10 *L.Ed.*2d at 774 (footnote omitted). As previously mentioned, a state–created lien is specific and perfected when "there is nothing more to be done to have a choate lien–when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. New Britain,* 347 *U.S.* at 84, 74 *S.Ct.* at 369, 98 *L.Ed.* at 525; *United States v. Equitable Life Assurance Soc.,* 384 *U.S.* at 327–328, 86 *S.Ct.* at 1563, 16 *L.Ed.*2d at 597; *United States v.*

*Pioneer American Ins. Co.*, 374 *U.S.* at 89, 83 *S.Ct.* at 1655, 10 *L.Ed.*2d at 775. In the instant case the identity of lienholder is clear, as is the property subject to lien. However, it is apparent that the amount of the lien for attorney's fee was undetermined and indefinite when the federal tax liens in question were filed. *See Pioneer American Ins. Co., supra,* 374 *U.S.* at 90–91, 83 *S.Ct.* at 1656, 10 *L.Ed.*2d at 775–776. As a matter of fact, the amount is still not certain, since the sum requested in plaintiff's affidavit of services may be adjusted by the court in the exercise of its discretion. *R.* 4:42–9(a)(2).

Thus, the application of the principle established in *Equitable Life* and *Pioneer American* would lend to the resolution of the present controversy in the United States' favor.

A similar result was reached in *Textile Products v. Feldan,* 54 *N.J.Super.* 291 (Ch.Div.1959). In that case Textile Products, as an assignee of New Jersey Quilting Co., sued Feldan and Schwartz for goods sold and delivered, amounting to $728.30. The answer admitted the debt but counterclaimed that 15 days from the date the suit was started a levy had been made by the United States upon defendants for all moneys due from them to the Quilting Co. Defendants represented that they were ready to pay the sum involved but asserted that they did not know who to pay in light of the tax levy. The United States was granted leave to assert its claim by way of an answer to a complaint in intervention.

At the pretrial conference it was conceded that, of the $728.30 originally owed by defendants to the Quilting Co., $250 had been paid before the levy, leaving a balance of $478.30 in defendants' possession. The government claimed the full sum of $728.30–250 from Textile Products and $278.30 from defendants–based on the theory that the filing of its lien on October 21, 1955 against the Quilting Co. for $6,300 established its priority under 26 *U.S.C.A.* §§ 6321–23. Judge Scherer directed defendant to pay into court the sum of $478.30 and allowed counsel fee of $100 to counsel for defendants–counterclaimants, together with taxed costs. This allowance was objected to by the United States.

After a review of the applicable law, Judge Scherer determined his prior decision was erroneous and, therefore, that the allowance of the counsel fee and taxed costs to the defendants must be set aside. The court explained:

> . . . the funds in the hands of the defendants were always subject to the lien of the United States, which was prior to Textile's assignment, and New Jersey Quilting Company, Inc. could not transfer this account except as encumbered by the lien. Thus, to allow a counsel fee and costs out of the fund is to whittle away that part of the lien which is equal to the amount of the counsel fee and costs. . . . .
>
> While the result in this case may seem to be unfair to the plaintiff and defendants, since all appear to have acted in good faith, the remedy is in a change in the federal lien statute. This court must follow the law as enunciated by the United States Supreme Court. In matters of federal taxes, the federal law is supreme, and state law cannot interfere. *United States v. Snyder*, 149 *U.S.* 210, 13 *S.Ct.* 846, 37 *L.Ed.* 705 (1893). [54 *N.J.Super.* at 295.]

■ Finally, the question arises whether this case is one of those instances, noted in *Equitable Life*, involving "the creation, enhancement or protection of a common fund from which equity permits a reimbursement of costs of litigation." *Equitable Life, supra*, 384 *U.S.* at 331, 86 *S.Ct.* at 1566, 16 *L.Ed.*2d at 599 (footnote omitted). As the following examination of several federal cases reveals, the instant case does not present the situation which the *Equitable Life* Court implicitly exempted from the operation of the common law rule.

Neither case cited by the court in *Equitable Life* as support for the exception is analogous to the present situation. *Trustees v. Greenough*, 105 *U.S.* 527, 26 *L.Ed.* 1157 (1882), concerned an action commenced by a bondholder, on behalf of himself and other bondholders, against the trustees of the funds for allegedly wasting the fund. In that case the Supreme Court ruled that if one jointly interested with others in a common fund maintains, in good faith, the litigation necessary to save it from waste and destruction, then that individual is entitled, in equity, to reimbursement of his costs as between solicitor and client, either out of the fund itself or by a proportional contribution from those who received the benefit of the litigation. 105 *U.S.* at 533–537, 26 *L.Ed.* at 1160–1162.

Similarly, *Sprague v. Ticonic National Bank*, 307 *U.S.* 161, 59 *S.Ct.* 777, 83 *L.Ed.* 1184 (1939), does not convince this court that attorney's fees would be properly awarded in the present case. *Sprague* addressed the issue of the power of the federal courts in equity suits to allow counsel fees and other expenses entailed by the litigation not included in the ordinary taxable costs recognized by statute. 307 *U.S.* at 164, 59 *S.Ct.* at 778, 83 *L.Ed.* at 1186. The court noted that the usual case for the award of fees was "one where through the complainant's efforts a fund is recovered in which others share." *Id.* at 165–166, 59 *S.Ct.* at 779, 83 *L.Ed.* at 1186. In *Sprague* petitioner by establishing her claim necessarily established the claims of 14 other trusts pertaining to the same bonds. The Supreme Court viewed the operative factor to be the creation of a fund for the benefit of others. *Id.* at 167, 59 *S.Ct.* at 780, 83 *L.Ed.* at 1187.

Both *Greenough* and *Sprague,supra*, are distinguishable from the instant case in that both involved costly effort, *i. e.*, litigation, on the part of the petitioner which benefited the others. In the present case plaintiff is merely a disinterested stakeholder who has not engaged in costly litigation to create, enhance or protect the fund in question. In fact, the only opposition encountered by plaintiff throughout this controversy has been with respect to plaintiff's request for a fee.

Furthermore, several lower court cases appear to go against stakeholder's position. In *Short v. United States*, 395 *F.Supp.* 1151 (E.D.Tex.1975), plaintiff had contracted to purchase certain equipment from one Holman. After paying one–half of the purchase price of $1,000, a delegate of the Secretary of the Treasury served a copy of a notice of levy upon plaintiffs for $57,290.12. After considering numerous issues not relevant here, the District Court discussed the plaintiff–stakeholder's request for attorney's fees. The court said:

> However disposed this court may be to award such fees to an innocent stakeholder forced into litigation to prevent double vexation, the rule seems well settled that "in United States tax cases, at least, the attorneys' fees and costs are tied to the fund. If the Government gets the whole fund, the fundholder takes nothing from it for attorneys' fees and costs." [at 1155; citations omitted]

A similar view was expressed in *Bank of America Nat'l Trust & Sav. Ass'n v. Mamakos*, 509 *F.*2d 1217 (9 Cir. 1975). In

*Mamakos* plaintiff–bank had filed an action in interpleader in state court naming the taxpayers, the taxpayers' attorney and the federal government as defendants in a controversy over their various claims to the taxpayers' bank account. After removal to federal court, the taxpayers and their attorney advised the bank's attorney that they no longer contested the government's right to collect the money. However, the bank refused to stipulate to dismiss the case unless it could deduct its costs and reasonable attorney's fees from the interpleaded fund. The district court granted the government's motion for summary judgment.

After discussing some procedural question not relevant here, the Court of Appeals explained:

> . . . the district court on remand would have to disallow the bank's claims for costs and attorneys fees. Such claims may not diminish the portion of an interpleaded fund to which the government is entitled by virtue of a federal tax lien. [at 1219; citations omitted]

Accordingly, this court rules that plaintiff's request for attorney's fees is denied at this time. However, the denial is without prejudice so that plaintiff may apply for a fee out of the excess, if any, remaining of the fund after the amount of the government's tax lien is satisfied, if the government prevails.