NORTH GATE CORPORATION, Plaintiff, v. NORTH GATE BOWL, INC., and others, Defendants: INDUSTRIAL COMMISSION, Intervening Plaintiff and Appellant: UNITED STATES OF AMERICA, Intervening Plaintiff and Respondent.*

*February 28—April 14, 1967.*

---

\* Motion for rehearing denied, without costs, on September 11, 1967.

519

520

For the appellant Industrial Commission there were briefs by *Arnold J. Spencer,* chief counsel of the unemployment compensation division, and *W. H. Putnam* of Madison, attorney, enforcements division, and oral argument by *Mr. Putnam.*

For the respondent the cause was argued by *Howard J. Feldman,* attorney, Department of Justice, Washington, D. C., with whom on the brief were *Mitchell Rogovin,* assistant attorney general of the United States, and *Lee A. Jackson* and *Joseph Kovner,* attorneys, Department of Justice, Washington, D. C.

WILKIE, J.   Three issues are presented on this appeal:
1. Is there an issue of fact as to whether the federal government made a demand upon the defendant taxpayer sufficient to validate its tax lien?

2. Must the federal government file notice of its tax lien with the register of deeds in Dane county in order to acquire priority against the lien of the Industrial Commission acquired pursuant to sec. 108.22 (2), Stats.?

3.   If filing is required, where demand is made on the taxpayer after the date of filing, does the effective date of the tax lien accrue at the time of filing or at the time when demand is made?

### No Issue of Fact on Demand.

A demand is necessary to establish the validity of the federal government's lien, and no lien can arise until there has been a demand for payment.[3]  Appellant asserts that summary judgment should never have been entered in favor of the United States because there was an issue of fact as to whether demand for payment of withholding taxes was ever made upon the defendant.

However, in paragraph 2 of the complaint of the United States, the United States alleged that the administrative assessments of tax liability were made on May 12, 1965. Paragraph 7 of the same complaint asserts that notice of assessment and demand for payment were made upon the defendant taxpayer on June 24, 1965. The Industrial Commission did not controvert either of these two allegations in its complaint,[4] or by affidavits

---

[3] *Sherman B. Ruth, Inc., v. O. S. V. The Marie and Winifred* (D. C. Mass. 1957), 150 Fed. Supp. 630; *Myrick v. United States* (5th Cir. 1961), 296 Fed. (2d) 312; *Textile Products v. Feldan* (1959), 54 N. J. Super. 291, 148 Atl. (2d) 741.

[4] In fact, appellant's complaint appears to accept the date of June 24, 1965, as the date of demand. Paragraph 7 of the Industrial Commission's complaint states: " 'Notice of assessment and

filed in connection with the motions for summary judgment.

Thus the parties, in essence, submitted an agreed case to the trial court. No argument was made in the trial court that there was an issue of fact as to whether demand was ever made. This defense is raised for the first time on this appeal. The raising of this defense comes too late.[5]

Accordingly, there is no issue of fact as to whether or not the federal government made a demand upon the defendant taxpayer. The only issue to be resolved here is what is the effective date of the federal tax lien as against the lien of the Industrial Commission. This is a question of law which can properly be resolved by summary judgment.[6] In answering this question, federal law must be applied. In *United States v. Security Trust & Savings Bank* the United States supreme court said:

"The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court."[7]

Thus, the question of whether filing the federal tax lien is required to acquire priority against the lien of the Industrial Commission and whether the federal tax lien stems from the date of filing or the date of demand must be resolved by applying federal law.

---

demand for payment were made upon the defendant taxpayer on June 24, 1965, but said defendant taxpayer has refused or neglected to pay the taxes which are due and owing to the United States of America.' "

[5] *State v. Conway*, ante, p. 76, 148 N. W. (2d) 721; *Harrington v. Downing* (1918), 166 Wis. 582, 166 N. W. 318.

[6] *Leszczynski v. Surges* (1966), 30 Wis. (2d) 534, 141 N. W. (2d) 261.

[7] (1950), 340 U. S. 47, 49, 71 Sup. Ct. 111, 95 L. Ed. 53.

### Need For Filing to Acquire Priority.

Sec. 6321, Int. Rev. Code of 1954, creates the ubiquitous federal tax lien which attaches to all property of a delinquent taxpayer. Sec. 6322 states that the lien imposed by sec. 6321 "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time." Sec. 6303 states that within sixty days after assessment the secretary or his delegate shall "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." Although proof of demand is required to validate the lien, the lien relates back to the time of assessment and the date of demand has no bearing on the relative priority of the lien.[8]

Under the facts in the case at bar the effective date of the lien would be May 12, 1965, well before the effective date of the lien of the Industrial Commission (June 17, 1965). Sec. 6321 was given a broad scope in *United States v. Snyder*.[9] In *Snyder* the federal tax lien or assessment arose before Snyder sold his property to a *bona fide* purchaser for value. The tax lien had never been recorded in Louisiana, the situs of the property, as required by the Louisiana constitution. The

[8] *Macatee, Inc., v. United States* (5th Cir. 1954), 214 Fed. (2d) 717, 719; *United States v. Pacific R. Co.* (C. C. Mo. 1880), 1 Fed. 97; Internal Revenue Code, 26 USCA, sec. 6322; William T. Plumb, Jr., Federal Tax Collection and Lien Problems, Part I, 13 Tax Law Review (1958), 247, 249, 250; Comment, The Relative Priorities of State and Federal Tax Liens to the Lien of Judgment Creditors, 15 American University Law Review (1965), 87, 89; Paul E. Anderson, Federal Tax Liens—Their Nature and Priority, 41 California Law Review (1953), 241, 271; 9 Mertens, Law of Federal Income Taxation, p. 93, sec. 54.40.

[9] (1893), 149 U. S. 210, 13 Sup. Ct. 846, 37 L. Ed. 705. *Snyder* involved an antecedent of sec. 6321, Int. Rev. Code of 1954, sec. 3186 of the Revised Statutes.

United States supreme court made a two-fold holding: (1) That the lien for taxes was not subject to the recording laws of the states, and (2) that the lien was enforceable against a subsequent *bona fide* purchaser for value without notice. This holding that the federal tax lien is paramount as to purchasers and creditors without notice of the lien was followed in *United States v. Curry*.[10]

The result of these cases was that the present sec. 6321, Int. Rev. Code of 1954,[11] was construed to give a comprehensive secret lien which made it impossible for people dealing in real estate to protect against. To avoid this problem, Congress passed the present sec. 6323 of the Internal Revenue Code, which section mitigates the secret lien as to mortgagees, purchasers, or judgment creditors by requiring that notice of the tax lien be filed in the state before it attaches to the property prior to the above interests.[12] However, the statute has always been strictly construed, and provides relief from the secret lien only when the countervailing lien comes

[10] (D. C. Md. 1912), 201 Fed. 371.

[11] The instant case arose in 1965 and the statutes applicable are those in effect at that time, *i.e.*, sec. 6323 (a) as it existed in 1965. In 1966 amendments were made to sec. 6323 (a) so that it now reads: "(a) Purchasers, Holders of Security Interests, Mechanic's Lienors, and Judgment Lien Creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate."

The Senate report on the change, 3 United States Code Congressional and Administrative News, 89th Congress (1966), at page 3722, states that the meaning of the term judgment creditor found in sec. 6323 (a) was not changed by the amendment.

[12] In 1939 pledgees were added to the exceptions in the present sec. 6323 so that the statute assumed its present form. *United States v. Security Trust & Savings Bank, supra,* footnote 7, at page 53.

within one of the classes specified in the statute.[13] All other creditors are subject to the priority of the secret federal tax lien from the date of assessment.[14]

In the case at bar, both parties and the trial judge have assumed that the Industrial Commission is a judgment creditor under sec. 6323, Int. Rev. Code, so that the federal government must file notice of its lien to preserve its rights against the Industrial Commission's lien. Sec. 108.22 (2), Stats., provides that the amount due the commission is to be determined by an administrative proceeding pursuant to sec. 108.10, Stats.[15] Once this amount is determined, sec. 108.22 (2) specifies that:

---

[13] *United States v. Security Trust & Savings Bank, supra,* footnote 7, at page 53: "My conclusion from this history is that the statute excludes from the provisions of this secret lien those types of interests which it specifically included in the statute and no others." Note, The Federal Tax Lien—A Practitioner's Guide to the Resolution and Avoidance of Priority Problems, 36 New York University Law Review (1961), 1316, 1320; William T. Plumb, Jr., Federal Tax Collection and Lien Problems, Part II, 13 Tax Law Review (1958), 459, 467. See also *United States v. Gilbert Associates* (1953), 345 U. S. 361, 73 Sup. Ct. 701, 97 L. Ed. 1071.

[14] *Macatee, Inc., v. United States, supra,* footnote 8.

[15] "108.10 Settlement of issues other than benefit claims. (1) In connection with any issue arising under this chapter as to any liability, of an employer of one or more persons in Wisconsin, for which no review is provided under section 108.09 and with respect to which no penalty is provided in section 108.24, the following procedure shall apply:

"(2) A deputy designated by the commission for the purpose shall investigate the existence and extent of any such liability, and may issue an initial determination accordingly; provided, however, that such a deputy may set aside or amend any such determination at any time on the basis of subsequent information or to correct a clerical mistake. A copy of each determination shall be mailed to the last known address of the employer affected thereby. The employer may request a hearing as to any matter therein, by filing such request with the deputy within 20 days after such mailing and in accordance with such procedure as the commission may by rule prescribe.

"(3) Any hearing duly requested shall be held before an appeal tribunal established in the manner provided by section 108.09

". . . The clerk shall enter in the judgment docket the name of the employer mentioned in the warrant and the amount of the contributions, interest, costs and other fees for which the warrant is issued and the date when such copy is filed. Thereupon the warrant so docketed shall be considered in all respects as a final judgment creating a perfected lien upon the employer's right, title and interest in all of his real and personal property located in the county wherein the warrant is docketed." [16]

(4), and section 108.09 (5) shall be applicable to the proceedings before such tribunal. Within 20 days after the appeal tribunal's decision has been mailed to the employer's last known address, he may petition the commission for review thereof pursuant to general commission rules, or the commission on recommendation of counsel may on its own motion transfer the proceedings to itself and reverse, change, or set aside the decision of the appeal tribunal on the basis of evidence previously submitted in such case, or direct the taking of additional testimony.

"(4) The commission's authority to take action as to any issue or proceeding under this section shall be the same as that specified in s. 108.09 (6) (a), (b) and (c).

"(5) The employer may commence action for the judicial review of a commission decision hereunder, provided said employer, after exhausting the remedies provided hereunder, has commenced such action within 30 days after such decision was mailed to his last known address. The scope of judicial review, and the manner thereof insofar as applicable, shall be the same as that provided in s. 108.09 (7).

"(6) The mailing of determinations and decisions provided in subsections (2), (3), (4) and (5) shall be first class, and may include the use of services performed by the postal department requiring the payment of extra fees.

"(7) Any determination by a deputy or any decision by an appeal tribunal or by the commission shall become conclusive with respect to the employer unless he has acted to secure a hearing or review as hereinbefore provided, but shall be binding on the commission only in so far as the relevant facts were included in the record which was before the deputy, appeal tribunal or commission at the time the determination or decision was issued."

[16] The Industrial Commission's method of getting a lien on property is entirely administrative. The requirement of docketing the lien with the clerk of court does not make the proceeding a judicial one.

Thus, the Industrial Commission becomes a judgment creditor only because the statute makes the commission's lien a judgment lien. The lien is not obtained by going through a court procedure nor is it obtained by obtaining a judgment in a state court.

The term "judgment creditor" for purposes of sec. 6323, Int. Rev. Code, has always been construed to mean a judgment creditor in the conventional sense.[17] In the case at bar, a statutory lien is involved which is given the force and effect of a "judgment lien" under state laws. Just such a case was involved in *United States v. Gilbert Associates*.[18] In *Gilbert*, the federal government assessed tax liens for employment, withholding, and income taxes that became due between 1943 and 1948. Notice of the lien was filed on August 6, 1948, although assessment and demand on the taxpayer had been made by the United States several times within the period. A New Hampshire town made an assessment of an *ad valorem* tax on the corporate taxpayer on April 1, 1947, and April 1, 1948, and the decisions of the New Hampshire supreme court raised this assessment to a judgment.

On appeal to the United States supreme court, the town contended it was a judgment creditor coming within the protection of sec. 3672 of the Internal Revenue Code (presently sec. 6323, Int. Rev. Code of 1954). Thus, since notice of the federal tax lien was filed after the town's assessment, the town's lien was prior. The supreme court rejected the town's contention that it was a judgment creditor. The federal tax laws required uniformity of interpretation and the term "judgment creditor" could not be fettered by various state definitions.

[17] *United States v. Security Trust & Savings Bank, supra,* footnote 7, at pages 51, 52.

[18] *Supra,* footnote 13.

"... In this instance, we think Congress used the words 'judgment creditor' in sec. 3672 in the usual, conventional sense of a judgment of a court of record, since all states have such courts. We do not think Congress had in mind the action of taxing authorities who may be acting judicially as in New Hampshire and some other states, where the end result is something 'in the nature of a judgment,' while in other states the taxing authorities act quasi-judicially and are considered administrative bodies." [19]

In the case at bar, the Industrial Commission is not a judgment creditor for purposes of sec. 6323, Int. Rev. Code, because its lien was obtained by an administrative procedure without contest and then docketed in the circuit court. The Industrial Commission thus does not come within the class of creditors who are protected by a requirement that notice of the tax lien be filed with the register of deeds. The federal tax lien is valid against the Industrial Commission from the date of assessment once demand is made upon the taxpayer. The assessment was made on May 12, 1965, a full month before the Industrial Commission's lien was filed on June 17, 1965. The order of the trial court granting summary judgment should be affirmed on this ground.

### Priority is Determined as of the Date Notice is Filed.

Assuming that the Industrial Commission is a judgment creditor for purposes of sec. 6323, Int. Rev. Code, that section states that the lien imposed by sec. 6321 shall not be valid against the Industrial Commission until notice is filed. In the case at bar, notice of the federal tax lien was filed on June 14, 1965. The lien of the Industrial Commission was docketed on June 17, 1965.

[19] *United States v. Gilbert Associates, supra,* footnote 13, at page 364.

However, demand upon the defendant taxpayer was not made until June 24, 1965. The question is whether the validity of the federal tax lien accrues at the time of demand, when demand is made after notice is filed, or whether the lien is effective as of an earlier date.

Appellant cites cases [20] in support of the proposition that demand is a condition precedent to a valid federal tax lien. In all these cases, however, no demand at all was made upon the taxpayer. In the case at bar, the demand has been made, but the issue is whether demand must be made before filing of notice in order that the effectiveness of the federal tax lien stem from the date of filing as against judgment creditors. [21]

In *In re Baltimore Pearl Hominy Co.* [22] the court held that the demand by the government could be waived by the taxpayer. The court said, ". . . The purpose of requiring a demand as a condition precedent to the tax becoming a lien is protection of the taxpayer; and any such right of protection may be waived by the person interested." *Macatee, Inc., v. United States* [23] sheds additional light on the function of demand in tax lien cases. In *Macatee*, demand was made on the taxpayer before the collector received the assessment list. The

[20] *Wethered v. Alban Tractor Co.* (1961), 224 Md. 408, 168 Atl. (2d) 358, and cases cited therein at pages 364, 365; *Sherman B. Ruth, Inc., v. O. S. V. The Marie and Winifred, supra,* footnote 3; *Myrick v. United States, supra,* footnote 3; *Textile Products v. Feldan, supra,* footnote 3.

[21] One of the cases cited by appellant does contain some language supporting his position. In *Detroit Bank v. United States* (1943), 317 U. S. 329, 335, 63 Sup. Ct. 297, 87 L. Ed. 304, the United States supreme court states: "Under R. S. sec. 3186 [now 6323] there is no lien and no notice can be recorded until there has been a demand by the collector and a refusal to pay it by the taxpayer." In this case, however, the court was discussing the estate tax lien, an entirely different lien, and referred to the lien under sec. 6323 only in dicta.

[22] (4th Cir. 1925), 5 Fed. (2d) 553, 555.

[23] *Supra,* footnote 8.

court said that although the lien under sec. 3670, Int. Rev. Code (now sec. 6321, Int. Rev. Code of 1954) did not arise until after demand was made on the taxpayer, sec. 3670 did not require that the demand be made after the receipt of the assessment list. The court concluded:

"The purpose of requiring such a notice and demand is for the protection of the taxpayer. . . . It has little or no relation to determining priority of liens between the United States and other lienholders. If a demand after receipt of the assessment list . . . is essential, the demand would relate back to the date of such receipt and the lien would take priority from that date." [24]

The *Macatee Case* indicates that once demand has been made, no matter when, the rights of the government to priorities are preserved. In the case at bar, the Industrial Commission argues that the filing of notice was ineffective against its lien because demand had not been made previous to the filing. The statute which requires that notice be filed does not require that demand be made first. Furthermore, once demand is made, the demand relates back to the time of assessment to establish a lien as to all other creditors except those stated in sec. 6323, Int. Rev. Code. The lien exists from the date of assessment, but the lien is not effective against judgment creditors until notice is filed.

The requirement of a demand is designed primarily for the benefit of the taxpayer. Other creditors have no way of knowing whether demand for payment has been made upon the taxpayer, but they are aware of the government's assertion of a lien once notice has been filed. Under sec. 6303, Int. Rev. Code, demand on the taxpayer may be made any time within sixty days after the date of assessment. The policy of the federal statutes is that while this administrative procedure designed for the benefit of the taxpayer is going on, the United States

---

[24] *Macatee, Inc., v. United States, supra*, footnote 8, at page 719.

should be able to protect itself against other creditors who do not have to go through the formality of demand and refusal.

Thus, the order granting summary judgment must be affirmed.

*By the Court.*—Order affirmed.

HANSEN, J., took no part.

HALLOWS, J. (*concurring*). While I agree with the result reached by the court on the ground the lien of the Industrial Commission does not constitute it a judgment creditor within the meaning of Int. Rev. Code of 1954, sec. 6323, so as to be protected from the ubiquitous lien of the United States government, I must disagree with the court's dicta that assuming the Industrial Commission is a judgment creditor under sec. 6323, it still does not have priority.

At the time the United States government filed a notice of lien on June 14, 1965, it had no lien and consequently the notice was not then effective. The lien of the commission arose upon the filing of the warrant on June 17, 1965. The demand of the United States government which is a prerequisite to the creation of its lien was not made until June 24, 1965. The majority believes: (1) A demand is not essential to the question of priority and (2) a demand subsequent to the filing of notice of lien is sufficient to vitalize that notice *nunc pro tunc.*

The two federal circuit court cases relied upon offer no support for the majority's position emasculating the protection given mortgagees, pledgees, purchasers, and judgment creditors by the Int. Rev. Code of 1954, sec. 6323. In *In Re Baltimore Pearl Hominy Co.* (4th Cir. 1925), 5 Fed. (2d) 553, the court was dealing with a claim in a bankruptcy proceeding for subrogation to a

government lien. Creditors had advanced money to compromise a federal tax claim. About two months after the payment of the compromise amount of the assessment the taxpayer was adjudged a bankrupt. The court held the government had a lien at the time of payment to which the creditors were subrogated because while no formal demand by the government had been made prior to the payment, the voluntary agreement between the commissioner and the taxpayer to compromise the amount was in effect a demand and if not a demand a waiver sufficient to support a lien. Of course, under these circumstances no notice of lien was filed and the court took pains to point out, "It is not contended that the trustees occupied the superior position of judgment creditors without notice of the circumstances which we have held created the lien for taxes in favor of the government." Consequently, this case is no authority for the very proposition the court stated it was not deciding.

In *Macatee, Inc., v. United States* (5th Cir. 1954), 214 Fed. (2d) 717, a demand was made by the government a few days prior to the dates on which the collector received the assessment lists. Subsequently, the government filed notices of lien, but prior to the filing of these notices Macatee acquired a statutory attachment lien. The court held the government lien was good against the statutory attachment lien without filing of any notice and although Macatee became a judgment creditor subsequently in the attachment suit, this was too late for priority because the government had by then filed its notice of lien. This case is not authority that a bogus notice of lien filed when the federal government has no lien is effective to give priority over persons protected by Int. Rev. Code of 1954, sec. 6323.

The majority opinion in footnote number 21 characterizes certain language in *Detroit Bank v. United States* (1943), 317 U. S. 329, 335, 63 Sup. Ct. 297, 87 L. Ed.

304, as dicta. This is error. The issue was whether a tax lien for estate taxes imposed by sec. 315 (a) of the Revenue Act of 1936 attached at the date of the decedent's death without an assessment or demand or whether that lien was subject to being recorded under the provisions of Revised Statutes, sec. 3186, in order to give it superiority to a lien of a mortgagee who acquired his mortgage for value in good faith without knowledge of the tax lien. Sec. 3186 is a predecessor section to the sections under consideration in the majority opinion. The court in deciding sec. 315 (a) alone applied to the estate tax lien distinguished the legislative history of that section and R. S. sec. 3186 to prove that each was intended to operate independently of each other. In this context the court said, "of particular significance is the difference in time when the liens attach under the two sections. Under R. S. sec. 3186 there is no lien and no notice can be recorded until there has been a demand by the collector and a refusal to pay it by the taxpayer. Under sec. 315 (a) as has been stated the lien arises on the death of the decedent and becomes effective against the purchasers and the mortgagees without assessment or demand and obviously before it would be possible to record a notice of lien under the provisions of R. S. sec. 3186." I think this language of the United States supreme court is good law; and the dicta of our majority opinion, bad law.

The only logical interpretation of Int. Rev. Code of 1954, sec. 6323, is that unless the demand is waived or made prior to or within sixty days of the date the collector receives the assessment list and before the notice of lien is filed the favored mortgagees, pledgees, purchasers, and judgment creditors are protected if their rights accrue prior to the filing of the notice of lien. But if a notice of lien is filed before the demand is made or waived in fact, the lien although relating back to the

date of the assessment for other purposes is not effective to defeat the rights of the favored class designated in sec. 6323 which have accrued prior to the demand or waiver. The filing of the notice of lien must be of a lien then existing, not one which may or may not come into existence depending upon a later demand or waiver. The federal government should not be allowed to file a notice of lien when it has none and then claim retroactivity of the demand so as to breathe life into the lifeless form of the notice and be a basis for a priority of lien. Sec. 6323 does not so provide and no cases so hold.