**Stephanie BAUER, Plaintiff-Appellant,**

**v.**

**John E. FOLEY, as District Director of Internal Revenue Service, Buffalo District, and the United States, Defendants.**

**No. 167, Docket 32556.**

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1968.

Decided Dec. 18, 1968.

---

L. Robert Leisner, Buffalo, N. Y., for plaintiff-appellant.

Issie L. Jenkins, Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Dept. of Justice, Washington, D. C., Andrew F. Phelan, U. S. Atty., and C. Donald O'Connor, Asst. U. S. Atty., Western District of New York, on the brief), for defendants-appellees.

Before KAUFMAN and ANDERSON, Circuit Judges, and TENNEY, District Judge.*

ANDERSON, Circuit Judge:

This is an action by Stephanie Bauer, the taxpayer, to enjoin the Government from seizing and selling her property, to have the tax assessment against her declared void, and to secure the release of federal tax liens. She appeals an order and decision which denied her motion for an injunction and granted the Government's motion to dismiss.[1] We reverse and remand.

The Government charged the taxpayer with liability for income tax deficiencies for the years 1950 through 1957, with penalties, on the income of her husband, Stanley J. Bauer, based upon the receipt by the District Director of tax returns for those years bearing the signatures "Stanley J. Bauer and Stephanie Bauer." Later, when it was discovered that there was no signature purporting to be that of the taxpayer on the 1950 and 1951 returns, the claims against her for those years were withdrawn.

On October 2, 1963 a single joint notice of claimed deficiencies, totalling $135,425.89, with interest and penalties, for the years 1950–1957, inclusive, was sent by certified mail to Stanley J. Bauer and Stephanie Bauer to their last known address, 105 St. Mary's Road, Buffalo, New York, where they still resided prior to their separation in 1965. The stated deficiencies were assessed against both Stanley J. and Stephanie Bauer and a single joint notice of assessment and demand for payment was mailed to them at the same address on January 24, 1964. Early in March 1964 the Government filed a lien in the Erie County Clerk's

---

* United States District Judge, Southern District of New York, sitting by designation.

1. Bauer v. Foley, 287 F.Supp. 343 (W.D. N.Y.1968).

Office for $135,425.89 on the taxpayer's home and took her insurance policy which had a value of $1064. A notice of seizure was placed on her home on March 17, 1966, reciting liability in the amount of $148,545.75; and a notice of sale of the property was published in a newspaper on April 4, 1966. The taxpayer alleges that she had no notice or knowledge of any of these proceedings against her until March 17, 1964, that she never filed a joint return with her husband, and any signature purporting to be hers on such a return was placed there through forgery or duress.

The district court granted the Government's motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. However, beside her verified complaint, the taxpayer filed an affidavit to which the Government filed an answering affidavit, in reply to which the taxpayer filed an additional affidavit. There were also exhibits and pre-trial depositions. All of these were considered by the district court in ruling on the motion to dismiss which, therefore, must be treated as one for summary judgment. Fed.R.Civ.P. 12(c).

From the pleadings and evidentiary material filed by the taxpayer, it appears that she and her husband lived together at 105 St. Mary's Road in Buffalo, New York for many years prior to 1965; that the taxpayer at no time after 1949 earned or received any taxable income; that she did not for the years 1950 through 1957 make, sign, or file a joint return with her husband or authorize or consent to the filing of a joint return by her husband with herself; that if any return for any of those years shows her name as a co-signer, the signature was forged by her husband, or, if her signature appears, it was placed on the return under duress imposed by her husband. The Government was aware that it had prosecuted and convicted the taxpayer's husband in the same court for having filed false and fraudulent tax returns for 1954 through 1957. It also on pre-trial deposition examined Stanley J. Bauer and Stephanie Bauer under oath prior to the final submission of the case to the trial judge.[2] It further appears that neither the notice of deficiency nor the notice of assessment was received by the taxpayer nor did she have any actual knowledge of either until she was advised of them by an Internal Revenue Agent when he called at her home on March 17, 1964; and that said notices were received and taken by Stanley J. Bauer.

2. Depositions of Stanley J. Bauer and Stephanie Bauer, taken on November 28, 1967, in the presence of an attorney for the Internal Revenue Service and an Assistant United States Attorney, and filed with the court below on February 20, 1968, appear to provide some support for appellant's allegations and indicate that appellant's claims are not frivolous or made solely for the purpose of delay:
[Examination of Mr. Bauer by Assistant U. S. Attorney O'Connor]
Q. Now, looking at this intently do you know' roughly in March of '53, when this, of course, had to be signed, whether you had discussed it with your wife, the filing of the joint return? A. I doubt if I ever discussed income tax returns with my wife to the extent that we had to file a joint return.
Q. By ever do you mean all of the way back to the 1930's or something? A. No, here is what I mean. In 1951 through 1958 when my tax returns became troublesome to myself and they involved Mrs. Bauer, I didn't bother her with those outside of the few times when she did not want to sign it and I under duress forced her to sign it. This is going back quite sometime—you know.
Q. Well, can you say at this time whether this "52 Return [sic] might have been signed by her as you say under duress or possibly was just forgery on your part? A. It could be either way.
Q. You have no way of knowing right now? A. No, sir.
[November 28, 1967 examination before trial at pp. 25–26]
Mr. Bauer testified that the "duress" was in the nature of threats; he also admitted shoving Mrs. Bauer. [Id. at 22, 23.] He also testified that he was "quite an artist in my day," that he had been drawing since he was fifteen, that he could duplicate his wife's signature, and that he had done so on the returns in question. [Id. at 23–33 and *passim.*]

The taxpayer has at no time had funds with which to pay the claimed deficiency and sue for a refund. Moreover, she received no notice and had no actual knowledge of any fixing of tax deficiency against her prior to the expiration of 90 days from the mailing of the single joint notice of deficiency under Title 26 U.S.C.A., 1964 ed., § 6212(b) (2),[3] so that she was never afforded an opportunity to petition the Tax Court under § 6213(a).[4] She claims that because of these circumstances she has no adequate remedy at law. The District Director's answering affidavit for the Government says, "Joint federal income tax returns for the years 1952 through 1957, inclusive, were filed bearing the signatures 'Stanley J. Bauer and Stephanie Bauer.'" It recited the mailing of the notices of deficiency and of assessment and the tax years and amounts involved in each year. It nowhere states or offers evidence to show, however, that Stephanie Bauer filed a joint return or participated in or consented to having one filed; it does not deny or set forth evidence to prove that her signatures were not forged or obtained under duress nor does it declare that the assessment is valid.

The taxpayer claims that she was not subject to joint liability for tax on her husband's income because she never executed or filed a joint return with him; that for this reason the claim against her and the placing of a lien upon, and the seizure and attempted sale of her property were unlawful and that the lien was also illegal because she was never individually notified of the assessment of any deficiency; and that she is entitled to equitable relief.

The Government asserts that it satisfied the statutory requirements of § 6212(b) (2), that the taxpayer did not petition the Tax Court for a redetermination of the deficiency under § 6213, or pay the deficiency and sue for refund under § 7422, and that her claim does not come within any court created or other exception to § 7421 which prohibits suits to restrain the assessment or collection of any tax. Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932); Botta v. Scanlon, 314 F.2d 392, 394 (2 Cir. 1963).

The district court agreed with the Government's contention and held that, inasmuch as the Government had given the notice of deficiency in compliance with § 6212(b) (2), the taxpayer was not entitled either to a hearing or to relief.[5] With regard to the taxpayer's claims the trial court said,

"Plaintiff submits that this [the single joint notice] was improper since there was no joint return because the wife's signature on the return was forged and/or coerced. This argument of the

3. 26 U.S.C., 1964 ed., § 6212(b) (2): *"Joint income tax return.*—In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, * * *."

4. 26 U.S.C.1964 ed. § 6213(a): "(a) *Time for filing petition and restriction on assessment.*—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided

in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

5. 287 F.Supp., at 345.

plaintiff, if sound, would require the government in advance to anticipate that the issues of forgery and/or coercion would be raised."

But the basic issue is not whether the Government had a right to compute and send out a notice of deficiency before it had examined into and discovered whether or not the signatures on the returns were genuine and that the filing was not the result of duress—a procedure which would impose an intolerable burden on the collection of taxes—but was, rather, whether or not the taxpayer wife, after gaining actual knowledge of the assessment, long after the only statutory remedy which she could invoke had expired, had a right to be heard and an opportunity to show that her signatures had been forged or obtained by duress.

The consequence of the Government's and the lower court's interpretation of the applicable statutes to the facts of this case is that, so long as a § 6212(b) (2) notice is mailed, a taxpayer wife is irrevocably bound by the forgery and duress of her husband and is subject to having all of her property confiscated by the Government, though she never had any taxable income of her own, and never became party to a joint return. This is to say that, even if the taxpayer can conclusively prove that her signature was forged or a joint return containing her signature was signed and filed under duress, she still, as a matter of law, is liable for the tax on her husband's income. But a single joint notice of deficiency is effective in imposing liability only "[i]n the case of a joint income tax return *filed by husband and wife. * * *"* (Emphasis added.) We think that this language means that the return contains the genuine signatures of both, unless signed by a duly authorized agent, and that neither was made under duress and that both intended that it be filed as the law requires. Moreover, it seems unreasonable to hold that Congress had in mind that the mailing of a single joint notice would operate, in the case of a forged or coerced joint return, to bar the party having no knowledge of it during the period for petitions for redetermination from ever being heard. Such a harsh result would conflict with the well-established objective of the notice provisions which is fairness to the taxpayer in affording him the opportunity to challenge an alleged deficiency in the Tax Court before he has to pay it. See, e. g., DeWelles v. United States, 378 F.2d 37, 38–39 (9 Cir. 1967).

■ There is no doubt that if a genuine joint return is signed by both husband and wife and later a proper § 6212 (b) (2) notice is, without the wife's knowledge, received by the husband but is not disclosed to her, she cannot defeat the assessment against her on the grounds that she did not get the notice or did not know what it was about. Pfeffer v. Commissioner of Internal Revenue, 272 F.2d 383 (2 Cir. 1959); Brown v. Lethert, 360 F.2d 560 (8 Cir. 1966); Cohen v. United States, 297 F.2d 760 (9 Cir. 1962), cert. denied, 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962); Luhring v. Glotzbach, 304 F.2d 556 (4 Cir. 1962); Whitmer v. Lucas, 53 F.2d 1006 (7 Cir. 1931). But that is not this case, for the issue here is whether or not in legal effect, a joint return was actually filed.

■■ The taxpayer is seeking relief through an injunction against the assessment of the deficiency and its collection. The Government argues that § 7421(a) prohibits the maintaining of a suit in any court to restrain the assessment or collection of any tax, with certain specified exceptions. In Enochs v. Williams Packing Co., supra, 370 U.S. at 7, 82 S.Ct. at 1129, the Supreme Court said,

"The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, if it is clear that under no circumstances could the Government ultimately pre-

vail, the central purpose of the Act is inapplicable and, under the Nut Margarine Case, the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in 'the guise of a tax.'"

██ If the trial court on remand finds that the signature of the taxpayer was forged on any of the tax returns in question or that the signature was placed on the return under duress, then such return cannot be treated as a joint return for the purposes of the statutes. Under such circumstances the Government could not under the most liberal view of the law and the facts establish its claim that the taxpayer was properly subject to a deficiency assessment based on that return. If the court further finds that the taxpayer does not have any property with which to pay the assessment and penalties and (1) she had no actual knowledge of the forging of her name upon and the filing of such purported joint return, or, (2) though knowing, she had under duress filed a joint tax return, and continued under a duress which prevented her from advising the Government that she had been coerced into signing a joint return and if either of these sets of circumstances, (1) and (2), continued for a period beyond the expiration of the 90 days allowed in § 6213(a) for the taxpayer to petition the Tax Court, the trial court may find that she had and has no adequate remedy at law and, in view of the "special and extraordinary circumstances," Miller v. Nut Margarine Co., supra, 284 U.S. at 509, 52 S.Ct. 260, grant equitable relief.

██ The issue in this case cannot be decided by this court on what is, in effect, an appeal from a granting of the Government's motion for summary judgment. The Government has relied entirely upon its theory of law and has made no effort to meet the basic issue here which is whether or not the returns in question were actually the joint returns of the taxpayer and her husband.

In *Enochs* the Supreme Court said, 370 U.S. p. 7, 82 S.Ct. p. 1129,

"We believe the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit."

From the evidentiary materials made a part of the record by the taxpayer in the district court, it would appear that there was information available at the time of the suit from which the Government knew or reasonably ought to have known that some, if not all, of the tax returns in question were not the genuine joint tax returns of the taxpayer and her husband. But, as noted above, we do not decide this on summary judgment but remand for a hearing.

██ It is also noted that although the notice of assessment and demand for payment was mailed to the taxpayers, husband and wife, on January 24, 1964, it was sent as a single joint notice. It was never received or seen by the taxpayer and she had no knowledge of it or its contents. The statute § 6303(a) [6] requires, however, that the assessment notice be given "to each person liable for the unpaid tax, stating the amount and demanding payment thereof." The Government argues that this makes no difference because failure to give the notice does not cut off any rights to which the taxpayer would otherwise be entitled, such as starting the running of a time period within which a petition for review or other protective action must be taken. This argument does not avail, however, to deprive the taxpayer wife of the right to a separate notice. The consequence

6. 26 U.S.C., 1964 ed., § 6303(a):
"(a) *General Rule.*—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address. * * *"

of such a defect in the notice is that it invalidates the lien subsequently filed.

It is not unreasonable that Congress permitted a joint notice of deficiency while requiring a separate notice of assessment, particularly since the notice and demand required by § 6303(a) have important consequences for the rights of the taxpayer. For example, § 6155 provides that the obligation to pay arises upon notice and demand required by § 6303(a). Section 6321 provides that a lien in favor of the United States upon all property and rights to property arises after demand and neglect or refusal to pay. Macatee, Inc. v. United States, 214 F.2d 717 (5 Cir. 1954); North Gate Corp. v. North Gate Bowl Inc., 34 Wis.2d 516, 149 N.W.2d 651 (1967).

The lien is declared invalid; the judgment of the district court is reversed and the case is remanded for a trial on the merits.