James REED, etc., et al., Plaintiffs,

v.

Carmen P CIVIELLO,
et al., Defendants.

No. 5:02 CV 0711.

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 17, 2003.

Jon M. Hollingsworth, Canton, OH, for Plaintiffs.

James A. Hall, Seventh Floor—Legal Dept., Akron, OH, Kent W. Penhallurick, Steven J. Paffilas, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH, Jill A. Whitworth, Assistant Attorney General, Revenue Recovery Section, Verna M. Jones, Michelle T. Sutter, Attorney General of Ohio, Collections Enforcement Section, Columbus, OH, David A. Thorley, Canton, OH, for Defendants.

### *MEMORANDUM AND ORDER*

O'MALLEY, District Judge.

This case presents a dispute between three governmental authorities regarding the priority of their liens on the proceeds of real property formerly owned by debtors Carmen and Nancy Civiello. The governmental entities are the United States Internal Revenue Service ("IRS"), the Ohio Department of Taxation ("Taxation"), and the Ohio Bureau of Worker's Compensation ("OBWC"). Each entity has filed a motion for summary judgment (docket nos. 11, 12, & 13). For the reasons stated below, the motion by OBWC is **GRANTED as unopposed,** the motion by the IRS is **GRANTED,** and the motion by Taxation is **DENIED.** Accordingly, the $81,312.76 currently being held by the escrow agent shall be distributed as follows:

- $470.17 shall be distributed to Taxation;

- $2,383.97 shall be distributed to OBWC; and

- $78,458.62 shall be distributed to the IRS.

## I.

The parties agree on the facts of this case, which are as follows. During the 1990s, the Civiellos failed to pay a number of their debts, including their mortgage payments and various federal and state taxes. Ultimately, this led to the sale of their home through foreclosure, on June 4, 2001. The escrow agent is now holding $81,312.76 in proceeds from that sale, awaiting direction from this Court on how the proceeds should be distributed.

Before the sale occurred, the parties placed a number of liens on the Civiellos' home. Specifically, the IRS placed six liens on the home (referred to below as "IRS–Lien–I" through "IRS–Lien–VI"), Taxation placed five liens on the home (referred to below as "Taxation–Lien–I" through "Taxation–Lien–V"), and OBWC placed one lien on the home (referred to below as "OBWC–Lien–I"). The total of the liens placed by the IRS is $358,467.27; the total of the liens placed by Taxation is $27,540.49; and the value of the OBWC's lien is $2,383.97. Obviously, the existing $81,312.76 in proceeds from the sale of the home is dwarfed by the total amount of the liens.[1]

The critical question presented by this case is the priority of the parties' respective liens on the proceeds. The answer to this question depends, in part, on when each governmental entity *assessed* its liens against the Civiellos, and when it *recorded* those liens. The timeline of these events is set out in the chart below. The shaded rows highlight when the IRS–Liens were assessed.

| Date | Lienor | Lien Name | Amount | Event |
|---|---|---|---|---|
| March 7, 1987 | Taxation | Taxation-Lien-I | $470.17 | lien assessed against both Carmen & Nancy Civiello for 1985 income tax liability. |

---

1. The lien amounts stated in this opinion refer to the *current* balances of the liens, as set out in the parties' stipulation of facts.

| Date | Lienor | Lien Name | Amount | Event |
|------|--------|-----------|--------|-------|
| June 13, 1991 | Taxation | Taxation-Lien-I | | notice of lien filed with Stark County Court of Common Pleas. |
| Sept. 30, 1991 | OBWC | OBWC-Lien-I | $2,383.97 | notice of lien filed with Stark County Court of Common Pleas. (Assessment date unstated; lien assessed against Nancy Civiello only, for worker's compensation premiums. |
| June 8, 1992 | IRS | IRS-Lien-I | $2,898.90 | lien assessed against both Carmen & Nancy Civiello, for 1990 income tax liability. |
| Dec. 4, 1992 | Taxation | Taxation-Lien-II | $5,452.63 | lien assessed against both Carmen & Nancy Civiello, for 1989 income tax liability. |
| Jan 22, 1993 | Taxation | Taxation-Lien-III | $14,107.63 | lien assessed against both Carmen & Nancy Civiello, for 1990 income tax liability. |
| Feb. 8, 1993 | IRS | IRS-Lien-II | $33,515.28 | lien assessed against Carmen Civiello only, for 1988 income tax liability. |
| Feb. 8, 1993 | IRS | IRS-Lien-III | $38,036.56 | lien assessed against both Carmen & Nancy Civiello, for 1989 income tax liability. |
| May 17, 1993 | IRS | IRS-Lien-IV | $10,433.88 | lien assessed against both Carmen & Nancy Civiello, for 1991 income tax liability. |
| June 15, 1993 | Taxation | Taxation-Lien-II | | notice of lien filed with Stark County Court of Common Pleas. |
| Aug. 19, 1993 | Taxation | Taxation-Lien-III | | notice of lien filed with Stark County Court of Common Pleas. |
| Sept. 3, 1993 | Taxation | Taxation-Lien-IV | $587.36 | lien assessed against both Carmen & Nancy Civiello, for 1991 income tax liability. |
| Jan. 10, 1994 | IRS | IRS-Lien-V | $52,213.98 | lien assessed against both Carmen & Nancy Civiello, for 1992 income tax liability. |
| April 8, 1994 | Taxation | Taxation-Lien-IV | | notice of lien filed with Stark County Court of Common Pleas. |
| July 1, 1994 | Taxation | Taxation-Lien-V | $62,922.70 | lien assessed against both Carmen & Nancy Civiello, for 1992 income tax liability. |
| Jan. 17, 1995 | Taxation | Taxation-Lien-V | | notice of lien filed with Stark County Court of Common Pleas. |
| Feb. 13, 1995 | IRS | IRS-Lien-VI | $221,368.67 | lien assessed against both Carmen & Nancy Civiello, for 1993 income tax liability. |

| Date | Lienor | Lien Name | Amount | Event |
|---|---|---|---|---|
| Feb. 22, 1995 | IRS | IRS-Lien-I | | notice of lien recorded with the Stark County Recorder. |
| Feb. 22, 1995 | IRS | IRS-Lien-II | | notice of lien recorded with the Stark County Recorder. |
| Feb. 22, 1995 | IRS | IRS-Lien-III | | notice of lien recorded with the Stark County Recorder. |
| Feb. 22, 1995 | IRS | IRS-Lien-IV | | notice of lien recorded with the Stark County Recorder. |
| Feb. 22, 1995 | IRS | IRS-Lien-V | | notice of lien recorded with the Stark County Recorder. |
| May 3, 1995 | IRS | IRS-Lien-VI | | notice of lien recorded with the Stark County Recorder. |
| May 6, 2001 | Taxation | Taxation-Lien-I | | notice of lien re-filed with Stark County Court of Common Pleas. |
| Aug. 30, 2001 | OBWC | OBWC-Lien-I | | notice of lien re-filed with Stark County Court of Common Pleas. |

As an initial matter, based on the dates set out above, the parties agree that Taxation–Lien–I, in the amount of $470.17, is first in priority. The parties further agree that OBWC–Lien–I, in the amount of $2,383.97, is second in priority.[2] Thus, the parties agree on how the escrow agent should distribute the first $2,854.14 of the $81,312.76 in existing proceeds. The IRS and Taxation disagree, however, on how the escrow agent should distribute the remaining $78,458.62 in proceeds. Thus, the question remaining for the Court is the relative priority of Taxation–Liens II–V and IRS–Liens I–VI.

## II.

In addition to agreeing to all of the material facts, the parties also agree that certain general rules apply when determining the priority of liens. The overriding rule is that "[t]he priority of the federal tax lien . . . as against liens created under state law is governed by the common-law rule—'the first in time is the first in right.'" *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963) (quoting *United States v. City of New Britain, Conn.*, 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). The parties also agree that "[i]t is critical, therefore, to determine *when* competing liens, whether federal- or state-created, come into existence or become valid for the purpose of the rule." *Id.* (emphasis added). Put differently, it is critical to determine when each of the competing liens became *choate*—"the priority of a lien depends on the time the lien attached to the property in question and became choate." *Minnesota Dept. of Revenue v. United States*, 184 F.3d 725, 728 (8th Cir.1999), *cert. denied*, 528 U.S. 1075, 120 S.Ct. 789, 145 L.Ed.2d 665 (2000) (citing *New Britain*, 347 U.S. at 84, 74 S.Ct. 367). A lien becomes choate when "there is nothing more to be done . . .—when the identity of the lienor, the property subject to the lien, and the amount of the lien are

**2.** The parties agree that these two liens have priority because Taxation–Lien–I and OBWC–Lien–I were both assessed *and* filed before any other lien was assessed *or* filed.

established." *New Britain,* 347 U.S. at 84, 74 S.Ct. 367.

■ The date that the six IRS–Liens came into existence is usually easy to determine: "[a] federal tax lien attaches and becomes choate at assessment." *In re Nerland Oil, Inc.,* 303 F.3d 911, 916 (8th Cir.2002) (citing 28 U.S.C. § 6321–22).[3] According to this rule, the six IRS–Liens became choate on the dates they were *assessed,* which are highlighted in the chart above. Thus, for example, under this rule, IRS–Lien–I arose and became choate when it was assessed on June 8, 1992. The chart reveals that, by May 17, 1993, the sum of the IRS–Liens that had become choate—that is, IRS–Liens I–IV— was $84,884.62, which is in excess of the existing proceeds.

■ Importantly, however, there is a statutory exception to the common law rule of "first in time, first in right." The exception is set out in section § 6323(a) of the federal tax code: "[t]he lien imposed by section 6321 shall not be valid as against any ... judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary [of the Treasury]." 26 U.S.C. § 6233(a). Section 6323(f), in turn, provides that, in the case of real property, the Secretary must file notice of the federal tax lien "in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated." Thus, pursuant to § 6323(a & f), the six IRS–Liens were not

deemed valid *as against a judgment creditor* until the date on which the Secretary filed notices of those liens with the Stark County recorder. As the chart above shows, the dates on which the Secretary filed notices of the IRS–Liens were well *after* the dates on which the IRS–Liens were first assessed, *after* the dates on which Taxation assessed the five Taxation–Liens, and—most important—*after* Taxation filed its own notices of lien with the Stark County Court of Common Pleas. In other words, if Taxation became a judgment lien creditor when it filed its notices of lien in the Court of Common Pleas, then the Taxation–Liens would have priority over the IRS–Liens.

Taxation argues that: (1) it is, in fact, a judgment lien creditor; (2) accordingly, the exception set out in § 6323(a) applies; (3) pursuant to the exception, Taxation–Liens I–V all became choate before IRS–Liens I–VI were filed; and (4) therefore, the escrow agent should first distribute the remaining proceeds in payment of all of the Taxation–Liens, before any of the IRS–Liens are satisfied. To assess the validity of this argument, the Court must determine whether Taxation is a judgment lien creditor, as that term is used in § 6323(a).

The seminal case on whether a lienowner is a judgment lien creditor is *United States v. Gilbert Assocs., Inc.,* 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953). In *Gilbert,* as in this case, a state taxing authority (specifically, the Town of Walpole, New Hampshire) obtained a tax lien on property owned by the insolvent defen-

---

**3.** Section 6321 of the internal revenue code states that, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 28 U.S.C. § 6321. Section 6322 makes clear that,

"[u]nless another date is specifically fixed by law, the lien imposed by section 6321 shall arise *at the time the assessment is made* and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322 (emphasis added).

dant, Gilbert Associates. The federal government also had a tax lien against Gilbert Associates. The Town argued in state court that its lien was "in the nature of a judgment," so that it was a judgment lien creditor and the exception set out in § 6323(a) applied. The Supreme Court of New Hampshire agreed with the Town, but the Supreme Court of the United States reversed. The Supreme Court first disagreed with the Town's contention that the question of who constitutes a judgment lien creditor should be governed by state law, ruling "that the meaning of a federal statute is for this Court to decide." *Id.* at 363, 73 S.Ct. 701. The Supreme Court then addressed the meaning of the term "judgment creditor," [4] as used in the IRS statute, as follows:

> A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor" should have the same application in all the states. In this instance, we think Congress used the words "judgment creditor" . . . in the usual, conventional sense of a judgment of a court of record, since all states have such courts. *We do not think Congress had in mind the action of taxing authorities who may be acting judicially* as in New Hampshire and some other states, where the end result is something "in the nature of a judgment," while in other states the taxing authorities act quasi-judicially and are considered administrative bodies.

*Id.* at 364, 73 S.Ct. 701 (footnotes omitted, emphasis added). In *Gilbert*, although the Town's tax assessments might have been " 'in the nature of a judgment' under the law of New Hampshire," the assessments were never actually reduced to a judgment from a "court of record." Accordingly, the *Gilbert* court held that the Town was not a judgment lien creditor: "whatever the tax proceedings of the Town of Walpole may amount to for the purposes of the State of New Hampshire, they were not such proceedings as resulted in making the Town a judgment creditor within the meaning of [§ 6323(a) ]." *Id.* at 365, 73 S.Ct. 701. The Town's liens, therefore, were second in priority to the federal government's liens.

In 1976, the IRS issued a regulation codifying the holding of *Gilbert.* The regulation explains that the term "judgment lien creditor":

> means a person who has obtained a valid judgment, *in a court of record and of competent jurisdiction,* for the recovery of specifically designated property or for a certain sum of money. * * * The term "judgment" does not include the determination of a quasi-judicial body or of an individual acting in a quasi-judicial capacity *such as the action of State taxing authorities.*

26 C.F.R. § 301.6323(h)–1(g) (emphasis added). This regulation, because it has "long continued without substantial change" and "appl[ies] to unamended or substantially reenacted statutes," is "deemed to have received congressional approval and have the effect of law." *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 220, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001).

Notably, ever since *Gilbert* was issued, lower courts have applied its holding uniformly. In *every* case this Court could find that cites *Gilbert,* where state and federal taxing authorities argued over the priority of competing liens, the court held that the federal liens had priority because

---

**4.** In 1966, Congress changed the term "judgment creditor" (contained in the predecessor statute to § 6323(a)) to "judgement lien creditor," but this change did not alter the effect of any prior case law.

the state taxing authority was *not* a judgment lien creditor. Even *state* courts that addressed this question so held. For example, in *North Gate Corp. v. North Gate Bowl. Inc.*, 34 Wis.2d 516, 149 N.W.2d 651 (1967), the Wisconsin Supreme Court examined the priority of liens owned by the Wisconsin Industrial Commission ("WIC") and the IRS. The court noted that the WIC lien was "not obtained by going through a court procedure nor ... by obtaining a judgment in a state court." *Id.* at 528, 149 N.W.2d 651. Rather, WIC's "method of getting a lien on property is entirely administrative. The requirement of docketing the lien with the clerk of court does not make the proceeding a judicial one." *Id.* at 527 n. 16, 149 N.W.2d 651. The court concluded that WIC "is not a judgment creditor for purposes of sec. 6323, Int. Rev.Code, because its lien was obtained by an administrative procedure without contest and then docketed in the circuit court." This remained true even though the taxpayer could have, in fact, contested the tax assessment through an administrative proceeding. *See id.* at 526 n. 15, 149 N.W.2d 651 (setting out the WIC administrative process for challenging tax liability). *See also In re South Independence, Inc.*, 256 B.R. 861, 866–67 (Bankr. E.D.Va.2000) (Virginia tax lien did not have priority even though Virginia filed a notice of lien in state court, because "anything less than a judgment in a court of record with judicial authority will not suffice"); *United States v. R & E Corp.*, 1999 WL 680376 at *6 (E.D.Pa. Aug.31, 1999) (Pennsylvania's "[f]iling a notice of a lien pursuant to section 788.1, involves no 'judicial intervention' and '[t]he fact that the legislation stated that the paper should be filed in the office of the Prothonotary does not make it a 'judgment,' even though the Prothonotary also is the repository for judicial records' "); *Brown v. State of Maryland*, 699 F.Supp. 1149, 1153 (D.Md.1987), *affirmed*, 1988 WL 124793 (4th Cir. Nov.10, 1988) ("[w]hatever the effect under state law of the recording by Maryland ... of a notice of assessment, such recording did not within the meaning of § 6323(a) constitute the entry of a judgment in favor of the State of Maryland by a court of record").[5]

■ The sum of this authority seems to make clear that, in this case, Taxation is not a judgment lien creditor, because its assessments were not judgments issued by an Ohio court of record with judicial authority. Rather, pursuant to Ohio statute: (1) the Ohio "tax commissioner ... ma[d]e an assessment against [the Civiellos] for [their tax] deficiency," Ohio Rev.Code § 5747.13(A); (2) "the assessment [became] final," after the Civiellos did not timely "file[ ] with the tax commissioner ... a written petition for reassessment," *id.* § 5747.13(B); and (C) "a certified copy of the tax commissioner's entry making the assessment final [was then] filed in the office of the clerk of the court of common pleas in [Stark County]," *id.* § 5747.13(C). As noted in the cases cited above, this last step does not transform the commissioner's assessment into a judgment issued by a court of record. *See, e.g., R & E Corp.*, 1999 WL 680376 at *6 ("[t]he fact that the legislation stated that the paper should be filed in the office of the Prothonotary does

---

5. *See also Foust v. Foust*, 1997 WL 1037872 at *7 (S.D.Ind. July 9, 1997); *Levith v. United States*, 1994 WL 71290 at *3 (E.D.La. Feb.28, 1994); *Hinkley and Donovan v. Paine*, 424 F.Supp. 1013, 1017 (D.N.H.1977); *C.I.T. Corp. v. United States*, 344 F.Supp. 1272, 1276 (N.D.Cal.1972); *United States v. City of Los Angeles*, 336 F.Supp. 1014 (C.D.Cal.1972). In all of the cases cited in this footnote and in the text above, the courts examined lien priority contests between state and federal taxing authorities; in every case, the court *rejected* the state taxing authority's argument that it was a judgment lien creditor.

not make it a 'judgment,' even though the Prothonotary also is the repository for judicial records"); *Brown v. State of Maryland*, 699 F.Supp. 1149, 1153 (D.Md.1987), *affirmed*, 1988 WL 124793 (4th Cir. Nov.10, 1988) ("the recording by Maryland ... of a notice of assessment ... did not within the meaning of § 6323(a) constitute the entry of a judgment in favor of the State of Maryland by a court of record").

Despite this overwhelming authority, Taxation insists it is a judgment lien creditor because Taxation, itself, is "the functional equivalent" of a court of record. Motion at 5. To support this assertion, Taxation draws a series of parallels between the administrative process before the Ohio Board of Tax Appeals and the normal judicial process that occurs in a court of record. Taxation notes, for example, that the tax commissioner's "assessment must be served upon the taxpayer or his agent by certified mail or personal delivery. The function of the assessment is similar to a civil complaint. The assessment requires an 'answer' to be filed by the taxpayer by means of a petition of reassessment." *Id.* at 7. Taxation further notes that, if the taxpayer files a petition for reassessment "and the petition is denied, then the taxpayer can appeal to the Board of Tax Appeals ('BTA')." *Id.* Taxation goes on to note that, when in front of the BTA, the taxpayer

> may be represented by an attorney. * * * Testimony is taken under oath and a record of such testimony is kept. Proceedings of the BTA are public. The courts reviewing such determinations are bound by the findings of fact and issues raised in the BTA. Discovery is permissible. The BTA and Taxation have subpoena powers. If the BTA affirms the Tax Commissioner, the taxpayer can appeal to the Ohio Supreme Court. Finally, after such an appeal is ultimately exhausted at the Ohio Su-

preme Court level or U.S. Supreme Court level, should the Tax Commissioner prevail, he files the same certified copy of the assessment with the Clerk of Common Pleas Court to obtain judgment as was filed in this case. Any appeal serves only to confirm or overturn the initial determination of the Tax Commissioner.

*Id.* at 7–8 (citations to Ohio Admin. Code omitted). Taxation concludes that, because this process "is the substantive equivalent of a court of record having a court's usual and conventional powers and characteristics," its assessments are judgment liens and Taxation is a judgment lien creditor. *Id.* at 8.

The only case that Taxation points to in support of its argument is *Air Power Inc. v. United States*, 741 F.2d 53 (4th Cir. 1984). In *Air Power*, the lien contest was between the IRS and a private lien-holder (Air Power)—not, as here, between the IRS and a state taxing authority. The odd wrinkle in *Air Power* was that "the Virginia legislature ha[d] characterized the Virginia general district court from which Air Power secured its judgment as a 'court not of record.'" *Id.* at 54. Given that Air Power's judgment was from a "court not of record," the federal district court held that Air Power could not be deemed a judgment lien creditor under § 6323(a) and IRS regulation 26 C.F.R. § 301.6323(h)–1(g). The *Air Power* appellate court reversed, holding that: (1) the question of "whether a judgment issues from a 'court of record' for purposes of section 6323 priority under the Internal Revenue Code is a question of federal law," not Virginia law; and (2) the Virginia general district court was, in fact a court of record, despite the Virginia legislature's own label to the contrary. *Id.*

In reaching the conclusion that the court from which Air Power had obtained its judgment was, in fact, a court of record, the *Air Power* court examined "the true character of the issuing court in light of Congress' expressed desire to confer special protection to certain qualifying state-created property interests." *Id.* at 58. The *Air Power* court stated that "[t]he dispositive question is not whether the tribunal carries the rubric 'court of record,' but whether it has been cloaked by its host state with the usual and conventional powers of a 'court of record' and operates as a judicial body." The *Air Power* court catalogued some of the powers wielded by the Virginia general district court, *id.* at 58, and concluded that these powers showed that the general district court was a court of record.

Taxation compares the catalogue of court powers listed in *Air Power* to the powers and procedures that Taxation follows in its own administrative process, as listed above. Taxation then concludes that it is as much a "court of record" as is the Virginia general district court. For at least three reasons, however, the Court finds Taxation's conclusion is not well-supported.

First, *Air Power* is easily distinguished on its facts. *Air Power* was examining whether a *court*, with a defined jurisdiction, was a "court of record." *Air Power* did not involve in any way a *governmental tax authority*, and the *Air Power* court was not assessing whether the administrative procedures provided by a governmental tax authority met the requirements of a "court of record and of competent jurisdiction." 26 C.F.R. § 301.6323(h)–1(g). Moreover, *Air Power* did not address at all the explicit provision in the IRS regulation stating that a " 'judgment' does not include the determination of a quasi-judicial body or of an individual acting in a quasi-judicial capacity *such as the action of State taxing authorities.*" *Id.* *Air Power* ignored this provision because it was not at issue in that case; Taxation ignores this provision, even though it is central to this case.

Second, the unanimity of the reported cases in concluding that, when state and federal taxing authorities argue over the priority of competing liens, the federal liens have priority because the state taxing authority is *not* a judgment lien creditor, includes cases that cite *Air Power* favorably. *In re South Independence, Inc.,* 256 B.R. at 866–67; *Brown,* 699 F.Supp. at 1153. The *Brown* court, for example, squarely rejects the same argument that Taxation advances in this case:

> Maryland's reliance on the *Air Power, Inc.* case is misplaced. There, a private judgment lien creditor was involved, and the critical question was whether the judgment had been obtained in a court of record in Virginia. In concluding that the Virginia court in question was a court of record under federal law, the Fourth Circuit, in applying federal law, emphasized the importance of nationwide uniformity. The principle of nationwide uniformity would not be advanced were this Court to rule that Maryland became a judgment lien creditor merely by recording a notice of the existence of its tax lien in the County land records.

*Brown,* 699 F.Supp. at 1153. Put simply, *Air Power* does not truly stand for the proposition for which Taxation cites it.

Finally, it is important to note that, to varying degrees, the state taxing authorities in virtually *every* state provide for administrative procedures similar to the ones Taxation identifies as the "functional equivalent" of a court of record. *See, e.g., North Gate Corp.,* 34 Wis.2d at 526 n. 15, 149 N.W.2d 651 (setting out the administrative process for Wisconsin tax assess-

ments). Thus, Taxation does not show how the circumstances of this case are critically different from those in other cases where state taxing authorities argued unsuccessfully that they were judgment lien creditors.

Taxation adds one last argument, noting that its own administrative process "is the only 'court of record', de facto or otherwise, with jurisdiction to establish sales, withholding, and personal income tax debt in the State of Ohio." Motion at 8. The inference that Taxation asks the Court to draw is that, because the State of Ohio has created the administrative process that Taxation uses as the *sole* mechanism for finally determining tax debt, that mechanism must be construed as a court of record. That the Ohio General Assembly chose to allow Taxation to create and enforce a lien through an administrative process, rather than through obtaining a judgment in a traditional court of record, however, is within the State's prerogative. One benefit of that choice is to streamline the process through which tax assessments occur and become final; one cost of that choice is to remove from Taxation the opportunity to avail itself of judgment lien creditor status under § 6323(a). There is no requirement that the State must make available a court of record to adjudicate tax liens from the inception of the assessment of the tax, and Ohio has chosen not to do so.

In sum, the IRS–Liens in this case became choate on the dates they were assessed; the Taxation–Liens became choate when the State filed notices of lien with the Stark County Court of Common Pleas; and there is no exception which justifies deviation from the principle of "first in time, first in right" when determining the priority of those respective liens. Because the IRS–Liens I–IV were all choate before Taxation–Liens II–V and take priority over those state liens, the IRS's motion for distribution must be granted.

**IT IS SO ORDERED.**